COMMONWEALTH vs. RUFUS CURRY
(and two companion cases against the same defendant).

Suffolk.    January 5, 1960. — May 5, 1960.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE,
& CUTTER, JJ.

*Narcotic Drugs. Conspiracy. Practice, Criminal,* Requests, rulings and
instructions. *Evidence,* Admissions and confessions, Of consciousness
of guilt.

After the judge at a criminal trial of two defendants had twice instructed
the jury that certain statements made by one of the defendants were not
evidence against his codefendant, the judge was not required so to
instruct the jury again later in the trial.    [53]    ·

On the record of a criminal trial for conspiracy, there was no error where
the judge during the trial refused to instruct the jury as to a limitation
on the use of certain evidence and remarked that he did "not propose to
give piecemeal instructions of the effect of evidence throughout the
trial."    [54]

At a criminal trial, evidence of an incriminating statement made concerning
the defendant in his presence by an alleged confederate during an inter-
rogation by police, and of the defendant's reply, "Man, why do you say
such things.    You think I put the cops on you.    I didn't put the cops
on you.    He is trying to get even," was admissible since the defendant's
reply was equivocal.    [54–55]

A conviction of conspiring to violate the narcotic drugs law was warranted
by evidence of the circumstances of the defendant's travelling to Boston
with his alleged coconspirator while the latter was carrying a substantial
quantity of heroin, of their occupying rooms in the same hotel in Boston,
where the defendant registered under an assumed name, of his visiting
the coconspirator's room in which the heroin was kept, of the defendant's
assuming that the coconspirator thought that the defendant "put the
cops on" him, and of conflicting and false statements made by the
defendant.    [55]

THREE INDICTMENTS found and returned on December 2,
1958.

The cases were tried in the Superior Court before *Kirk,* J.

*Albert L. Hutton, Jr., (Ronald J. Chisholm* with him,) for
the defendant.

*Gerald Miraldi,* Assistant District Attorney, *(John E.
Driscoll* with him,) for the Commonwealth.

WILLIAMS, J.   The defendant was found guilty and sentenced on three indictments which charged him respectively with intent to sell heroin under G. L. c. 94, § 212A, as appearing in St. 1957, c. 660, § 1 (No. 1411 of 1959); with possession of heroin under G. L. c. 94, § 212, as appearing in St. 1958, c. 95, § 2 (No. 1413 of 1959); and jointly with one Eugene Rhodes with conspiracy to violate the narcotic drugs law under G. L. c. 94, § 217B, inserted by St. 1957, c. 660, § 1 (No. 1410 of 1959).   These indictments were tried with other indictments against Rhodes to which he pleaded guilty after the close of the evidence.   During the trial the defendant Curry excepted to the admission of certain evidence, to the refusal to instruct the jury as requested, and to the denial of motions for directed verdicts of not guilty.

There was evidence that on November 5, 1958, two police officers and a Federal narcotics agent gained entrance to room 205 in the Columbus Arms Hotel on Columbus Avenue in Boston and found Rhodes lying upon a bed.   There was a package under the wash basin and several small packages on the bureau containing a white powder which upon analysis proved to be heroin.   They found in the room a hypodermic syringe, two hypodermic needles and a "cooking cup."   Rhodes was arrested and at the police station gave a statement to the police which was reduced to writing and signed by him.   Therein he stated that he had known Curry, whom he knew as "Jeep" eight or nine years, having first met him in Philadelphia.   On Monday night, November 3, he met Jeep in New York city.   They pooled their money with one "Sarge" and bought one hundred bags of which Sarge took twenty-eight and Jeep and Rhodes kept about seventy.   They talked about selling them in Boston where Jeep said he knew a lot of "junkies."   About 12:20 P.M. on November 4 Jeep and he took a bus for Boston, he, Rhodes, carrying the bags in his pocket.   They arrived in Boston about 9:30 P.M., getting off before reaching the terminal and taking a cab which Jeep directed to be driven to Columbus Arms Hotel.   Jeep got off at the corner of Massachusetts and Columbus avenues and Rhodes went to

the hotel at 455 Columbus Avenue and registered as Walker Jones. Later that night Jeep came in and said that he had rented room 203. Jeep came into Rhodes's room between 11 A.M. and 12 M. the next morning and said that he was going out on the street with some of the bags. Rhodes later checked out but went back to the hotel and checked in again in the same room. Rhodes hid the heroin, which he said belonged to him, under the wash basin. The heroin which was bought in New York was purchased from a man known as "Moose." Jeep did not put any money of his own in the deal as Rhodes was going to split fifty-fifty after expenses. Jeep and Rhodes took the bus for Boston at the Greyhound Terminal at 54th Street and Jeep paid for the bus tickets.

Curry was arrested on the same day at the corner of Columbus and Massachusetts avenues. At police headquarters he stated that he had come to Boston the night before on a bus. When asked where he had stayed that night he said that he had walked the streets but could not remember their names, not being familiar with them. After more questioning he said "All right, I will tell you, I stayed at the Columbus Arms Hotel." He said that he was in room 203 and registered under the name of Rufus Hill. He was asked why he had the two bus stubs which had been found upon him when he was arrested. He said that he had bought one and found the other on the floor of the bus terminal in New York. Later he said that he collected the bus stubs in Boston. He was asked, "Isn't it rather odd that the numbers on the bus tickets are consecutive?" and he answered "Yes, it does seem like it was a coincidence; it could happen that way." He said that he talked with three other colored fellows on the bus and all left the bus before it reached the terminal intending to play cards. They then decided not to play and he and one of them whom he knew as Gene took a cab. He left the cab at the corner of Columbus and Massachusetts avenues and Gene drove off. He next saw Gene when he registered at the Columbus Arms Hotel. Gene was walking upstairs. He never saw Gene

after that and did not know whether he stayed there as a guest.

Rhodes's statement was read to Curry and he said "The man is lying. I don't know why he wants to incriminate me. He must think I set the police on him because he knew I was the only man who knew he was in Boston." Rhodes's statement was admitted in evidence but only against him and the jury were instructed at the request of Curry's attorney, both when it was read to the jury and subsequently when it was marked as an exhibit, that it was limited to Rhodes and was not to be considered against Curry. Near the end of the trial the attorney "renewed his request that the court rule that this statement was not admissible because the defendant denied it" and requested that the jury be instructed "that the statement of Rhodes was admissible only as a foundation for the answers of Curry and not as affirmative evidence." There was no error in refusing these requests. The judge, having already ruled twice that the statement was not evidence against Curry, was not required to repeat his ruling, or to rule that it was only admissible for the limited purpose suggested by the attorney. Curry was questioned in the presence of Rhodes as to meeting him and talking with him at the New York bus terminal. Curry at first denied that he had any conversation with Rhodes (or Gene) "because Gene stood back of him at the line at the ticket counter." Rhodes in reply to a question by an officer stated that "Jeep purchased two tickets, one for himself and one for him, Jeep using his own money." Curry then said that "he was standing behind me in the line and he gave me his money and told me to get him a ticket as he had to go to the bathroom." When asked to explain how he had possession of Rhodes's ticket stub, Curry said, "When we stopped off to eat, Rhodes threw his stub away. I bent down and picked it up and said, 'Man, don't throw it away. You need that ticket to get off the bus.' So kept it." Rhodes said that he had known Jeep in Philadelphia for the past eight years. In reply Curry denied knowing him in Philadelphia and said, "He may

have known me. A lot of people in Philadelphia know me but I don't know them.'' Curry said he knew a lot of people in Boston; that ''he had been coming to Boston for the past few months, staying a few days and then leaving.'' When Rhodes said that Jeep had come to his room on the evening of November 4, and again sometime before noon on November 5, Jeep said, ''Man, why do you say such things. You think I put the cops on you. I didn't put the cops on you. He is trying to get even.''

There was no error in the refusal of the judge to instruct the jury as requested by Curry that ''the statements of Rhodes referred to during the above conversation was [*sic*], as far as the defendant Curry was concerned, admissible for the limited purpose of laying a foundation for the answers given by the defendant and not as probative evidence in and of itself.'' The judge said that he did ''not propose to give piecemeal instructions of the effect of evidence throughout the trial.'' It is not always feasible to rule finally upon the bearing of separate pieces of evidence until the evidence is completed. This is particularly true in the trial of a charge of conspiracy. For this reason in cases of doubt evidence may be admitted de bene and the determination of its admissibility or effect postponed until the parties have rested. Although the judge made no final ruling on the evidence and Curry presented no requests for rulings or instructions at its conclusion we have considered the competency of the talks in which Rhodes and Curry participated and think that they were admissible against Curry on the principle stated in *Commonwealth* v. *Madeiros*, 255 Mass. 304, 313. ''When a defendant while under arrest is charged with a crime by an accusation made in his presence, and makes an equivocal reply or one susceptible of being interpreted as an admission or one not likely to be made by an innocent man, the question or statement and the answer or comment are admissible.'' In that case there was a statement implicating the defendant who thereupon called the person who made the statement an insulting name and said, ''I would like to kill you.'' In *Commonwealth* v.

*Hamel,* 264 Mass. 564, 569, there was the comment by the defendant as to the one making an accusation that the "girl was out of her head, she did not know what she was talking about." In each case the statements and the replies were held to be admissible. Curry's rejoinder was not a denial of the truth of Rhodes's statement but an equivocal statement relating to the motive for the accusation.

There was sufficient evidence competent against Curry to warrant a finding that he conspired with Rhodes to violate the narcotic drugs law. It could be found that he purchased the ticket on which Rhodes travelled to Boston carrying a relatively large stock of heroin and articles adapted for its use; that he accompanied Rhodes to Boston; that he occupied a room adjacent to that of Rhodes in the same hotel where he registered under an assumed name; and that he visited Rhodes in his room where the heroin was kept. His conflicting statements as to his purchase of Rhodes's ticket and his possession of the ticket stub, together with his false statement respecting where he had spent the night, indicated an attempt to conceal the extent of his acquaintance with Rhodes. It could fairly be inferred that his exclusive knowledge of Rhodes's presence in Boston came from an intimate association with Rhodes and his assumption that Rhodes thought he "put the cops" on him from consciousness of his complicity with Rhodes. Evidence of consciousness of guilt, while not conclusive, may with other evidence be sufficient to prove guilt. *Commonwealth* v. *Webster,* 5 Cush. 295, 316. *Commonwealth* v. *Trefethen,* 157 Mass. 180, 199. *Commonwealth* v. *Smith,* 162 Mass. 508. *Commonwealth* v. *Devaney,* 182 Mass. 33, 36. *Commonwealth* v. *Spezzaro,* 250 Mass. 454. There was no error in denying the motion for a directed verdict on indictment No. 1410. The motions for directed verdicts on indictments Nos. 1413 and 1411 should have been allowed. There was no evidence of Curry's possession of heroin or of his specific intent to sell it.

> *Indictment No. 1410 exceptions overruled.*
> *Indictment No. 1411 exceptions sustained.*
> *Indictment No. 1413 exceptions sustained.*