COMMONWEALTH *vs.* GEORGE R. SWARTZ.

Norfolk.    February 5, 1962. — March 1, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Motor Vehicle,* Operation.   *Evidence,* Admissions and confessions, Consciousness of guilt.

At the trial of a complaint for violation of G. L. c. 90, § 24, in that the defendant, while operating a motor vehicle on a way, went away after knowingly colliding with another vehicle without stopping and giving the information specified in the statute, where the substantial issue was whether the defendant was operating his automobile when it collided with another vehicle at night, a finding that he was then the operator was warranted by circumstantial evidence including evidence of statements made by him to the police when questioned about the matter the following night.

COMPLAINT, received and sworn to in the District Court of Western Norfolk on June 5, 1961.

On appeal to the Superior Court the case was tried before *Morley,* J., a District Court judge sitting under statutory authority.

*Francis C. McKenna,* for the defendant.

*Walter E. Palmer,* Assistant District Attorney, for the Commonwealth.

KIRK, J.   On a complaint charging that the defendant, in violation of G. L. c. 90, § 24, while operating a motor vehicle on a way in the town of Norfolk did go away after knowingly colliding with the vehicle of one Sundquist without stopping and making known his name, residence, and the registration number of his motor vehicle, the jury returned a verdict of guilty.   The judge reported the case to us on a stipulation under G. L. c. 278, § 30.   The question presented is whether the evidence is sufficient to support the verdict.

About 10 P.M. on May 28, 1961, while operating his car on Medway Street in a westerly direction, accompanied by his

wife and children, Sundquist, observing a car coming in
the opposite direction at a fast rate of speed, drove his car
as far as he could to the right side of the road. The other
car came over and hit his car, causing damage on the left
front fender and left rear door. The other car did not
stop. Sundquist did not see the operator of the other car;
nor could he say what kind of car it was, or its color or
make. The police came to the scene. Photographs of the
Sundquist car show substantial damage along its left side.
A piece of chrome from a car and a piece of glass were
found at the place where the accident occurred. Sundquist
did not see the defendant at the scene. He never spoke to
the defendant. Neighboring police were notified.

The following night, about 11:30 P.M., the defendant's
car was found parked opposite the house where he lived in
Medway. The piece of chrome fitted the defendant's car,
and the piece of glass fitted the broken headlight of the de-
fendant's car. When the defendant later arrived he told
the police that he owned the car; that, about 8:30 P.M. on
the evening of May 28, he had parked the car in front of the
Village Inn; that he later, about 10:30 P.M., found the car
parked in the rear of the Village Inn; that he discovered
the damage when he attempted to put his headlights on;
that he did not notify the police because he had a few beers
and did not want to go to the police station to report the
car stolen "with beer on his breath."

The defendant and two witnesses testified on his behalf.
His girl friend, a telephone operator, testified that she
had telephoned him at the Village Inn in Medway about
9:45 P.M. on May 28 and had talked with him for approxi-
mately ten minutes, mainly about driving her from work
the following night. Another friend, one Callahan, testi-
fied that he and his parents and the defendant on May 28
sat and talked and ordered beer in the dining room of the
inn from shortly after 9 P.M. until 9:45 P.M. when the de-
fendant received a telephone call; that the defendant re-
turned about 10 P.M.; that the defendant was upset because
someone had moved his car from the front of the inn. The

defendant testified that after he had arrived at the inn he met and talked with the Callahans; that he had received the telephone call from his girl friend; that on completion of the call while returning to the dining room he noticed that his car was missing; that he was upset and spoke about it; that, when his friends left, he left by the front door of the inn, walked to the rear of the inn and found his car in the back parking lot. The lights did not work. He was helped by one Mayer, since deceased. With parking lights on, he followed Mayer's car home. He customarily parked his car across the street from his house. He never personally reported his car stolen to the police. He never authorized anyone to use his car and ordinarily he is the only one to drive it. He testified that when questioned by the chief on May 29, 1961, he told him that he found the car damaged behind the Village Inn; somebody took it; he had not reported it stolen because he had beer on his breath.

On the foregoing evidence, there is no dispute that the jury could find that the defendant's car was involved in the collision; that the operator had knowingly collided with another vehicle, and had gone away without stopping and giving the information required by the statute. The dispute centers on whether the evidence is sufficient to warrant a finding that the defendant was the operator of his car at the time of the collision. *Nager* v. *Reid,* 240 Mass. 211, 214.

As was said in *Commonwealth* v. *Shea,* 324 Mass. 710, 713, "While it is not necessary to prove that the defendant had the exclusive opportunity to commit the crimes, *Commonwealth* v. *Leach,* 160 Mass. 542, 551; *Commonwealth* v. *Gentile,* 255 Mass. 116, 118, and while the inferences need not be inescapable or necessary, *Commonwealth* v. *Ehrlich,* 308 Mass. 498, 500; *Commonwealth* v. *Barker,* 311 Mass. 82, 90–91; *Commonwealth* v. *Grieco,* 323 Mass. 639, 642, yet the evidence must be such as to convince a jury beyond a reasonable doubt that the defendant, and no one else, committed the offences charged. Here there was no direct and positive proof that the defendant committed the offences charged. The evidence was in this respect altogether circumstantial."

The probative character of circumstantial evidence has been frequently stated and referred to, and need not be repeated. *Commonwealth* v. *Webster,* 5 Cush. 295, 319. *Commonwealth* v. *Russ,* 232 Mass. 58, 68, 69, and cases cited. *Commonwealth* v. *Smith,* 342 Mass. 180, 182–183, and cases cited.

The jury could refuse to believe the testimony offered by the defendant as to his whereabouts at the time the offence was committed. Such disbelief could not provide affirmative evidence that he was the operator of the offending vehicle. There was, however, more than mere disbelief of the defendant's evidence as to his whereabouts at the time of the accident for the jury to consider. He obviously had the opportunity to operate the vehicle at the time in question. Furthermore, it was readily inferable that he was in possession of the ordinary means (the ignition key), although not necessarily the exclusive means, to operate the vehicle inasmuch as he had admittedly driven it to the inn at 8:30 P.M. and away from the inn at 10:30 P.M. Moreover, by his statements to the police on the night of May 29 and by his own testimony at the trial, the defendant disclosed that he had almost, if not completely, exclusive knowledge at 10 P.M. on May 28 that his car was unaccountably missing from the front of the inn, and that he had done nothing about it. Similarly, he disclosed in addition that he had almost, if not completely, exclusive knowledge at 10:30 P.M. that his vehicle was parked behind the inn in a damaged condition which gave him reason to believe or suspect that it had been involved in a collision, and that he had done nothing about it.

The jury could say in the overall circumstances that his silence and inaction until inquiry of him by the police more than twenty-four hours later were not reasonably consistent with innocence or with his contention of having been the victim of a wrong to his property by another. They could likewise say that his continued silence and inaction were not satisfactorily explained by the mere fact that he "had beer on his breath" on the evening of May 28. Rather, his

conduct, in the light of the knowledge which he admittedly had, provided a solid factual basis for an inference by the jury that the defendant was conscious of guilt of an offence which in fact had been committed. The inference, while not compelling, was at least permissible. Its weight was for the jury. It is an admission by conduct from which guilt may be inferred. *Commonwealth* v. *Devaney,* 182 Mass. 33, 36. *Commonwealth* v. *Bond,* 188 Mass. 91, 94. *Commonwealth* v. *Spezzaro,* 250 Mass. 454, 457. *Commonwealth* v. *Bonomi,* 335 Mass. 327, 348.

Evidence of consciousness of guilt, while not conclusive, may, with other evidence, be sufficient to prove guilt. *Commonwealth* v. *Curry,* 341 Mass. 50, 55, and cases cited.

We cannot say that the evidence was insufficient to support the verdict. It was proper to submit the case to the jury. *Commonwealth* v. *Henry,* 338 Mass. 786.

It follows that in accordance with the stipulation the case is to be remanded to the Superior Court for disposition.

*So ordered.*