COMMONWEALTH *vs.* JOSEPH A. MEDEIROS
(and eleven companion cases).

Middlesex.    March 4, 1968. — May 2, 1968.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Accessory and Principal. Practice, Criminal,* Exceptions: exception to charge; Psychiatrist.

Circumstantial evidence in criminal proceedings warranted findings that the defendant with another man in an automobile followed a young woman driving another automobile for a long distance to her home late at night, that the defendant then drove the first automobile to a nearby place and parked it there while the other man, at or near the woman's home, committed crimes of kidnapping, assault, and robbery involving the woman and her young child, after which the two men drove away in the first automobile, and that the defendant participated in the crimes sufficiently to make him a principal in their commission. [197–198]

The defendant in a criminal proceeding had no standing to press an assignment of error based on a general exception to a portion of the charge to the jury where it appeared that the defendant had not requested any instructions on the point involved in such portion of the charge, and that upon the judge's inquiring of counsel whether they wanted him "to change that [portion] in any way" the defendant's counsel remained silent. [199]

Where it appeared in a criminal proceeding against an indigent defendant that prior to trial the judge appointed a psychiatrist who examined

the defendant and filed a full report, which was in addition to two reports from a State hospital, there was no error in denial of a motion that a psychiatrist to be selected by the defendant be appointed to assist him in his defence at the expense of the Commonwealth. [199–200]

TWELVE INDICTMENTS found and returned in the Superior Court on November 9, 1966.

A pre-trial motion by the defendant Bernier for the appointment of a psychiatrist to assist him in his defence was denied by *Hudson, J.* The cases were tried before *Brogna, J.*

*Ronald J. Chisholm* for the defendants.

*Ruth I. Abrams,* Assistant District Attorney, for the Commonwealth.

KIRK, J.   The defendants Medeiros and Norman G. Bernier were each separately indicted on the following five charges: the kidnapping of Jo-Ann Pawlik, the kidnapping of her daughter Alexis Pawlik, assault and battery while armed with a dangerous weapon upon Jo-Ann Pawlik, assault upon Alexis Pawlik while armed with a dangerous weapon, and robbery of Jo-Ann Pawlik while armed with a dangerous weapon.   In addition Bernier was indicted for carrying on his person without authority, a firearm, and Medeiros for carrying under his control in a vehicle a firearm without a permit.   All of the charges arose out of the same event and were tried together under G. L. c. 278, §§ 33A–33G.   Both defendants were found guilty on all the indictments, and both have appealed.   Medeiros assigns as error the denial of his motions for a directed verdict on each charge and the instructions given to the jury relating to the carrying of a firearm.   Bernier's only assignment of error was the denial of his motion that the judge appoint a psychiatrist nominated by Bernier to assist in his defence.

We summarize the evidence.   On the evening of September 21, 1966, Jo-Ann Pawlik (Jo-Ann) and her two year old daughter Alexis rode with Jo-Ann's boy friend to the United States Naval Station at Newport, Rhode Island, where he was stationed.[1]   At 11:30 P.M. Jo-Ann left her friend at

---

[1] Jo-Ann's child was born of a marriage which was annulled in March, 1966.

his station and commenced the return trip to Newton where she lived. Her car was a black Volkswagen. Alexis was asleep in the back seat. About midnight, as Jo-Ann drove through Fall River she became aware that an automobile was following her. When she passed the Needham Industrial Center she was able to identify the car as a white Volvo. It followed her as she made several changes of direction to reach her street in Newton. As she made the turn into her street she did not see the Volvo. When she stopped in her driveway, however, and put out the lights of her car, a man with a pistol ran to her (the driver's) side of the car. She saw the taillights of a car driving away. It was raining and dark. The man, whom she identified as the defendant Bernier, threatened her with the gun, ordered her to unlock the car door, and got into the car. At this point Alexis awoke and remained awake throughout the episode which followed. Pointing the gun at her, Bernier ordered Jo-Ann to drive the car to a spot "two halfblocks" away. She did so. When the car stopped, he demanded her money at gunpoint. She gave him $21 from her purse. He then told her to take off her clothes. When she refused to remove her underclothing, he pointed the gun at Alexis' head and pressed back the hammer. He showed Jo-Ann that the gun was fully loaded. She removed her underthings. Bernier took off his glove or gloves and felt her body with his hands.

When Bernier was ready to leave he asked Jo-Ann for her name and address, saying that if she "ever called the cops" he would send someone after her. She wrote her name and address on an envelope that bore the name of a bank. Bernier took the envelope and placed it in his pocket. He warned her to wait twenty minutes and not look back. Bernier then left the car and went toward the rear of the vehicle. Less than a minute later, he returned and ordered Jo-Ann to open the door once again. He entered the car and told Jo-Ann that she would have to drive him to New Bedford because his "buddy" wasn't there. She replied that she did not have enough gas and he ordered her to drive around and look for his friend. She backed up "three

houses and a store" to the corner of the next street and turned, at which time she saw a parked white Volvo and called it to Bernier's attention. It was the same car which had followed her from Fall River. He said, "That's it," and ordered her to turn her car around and wait five minutes. When the car was turned around Bernier left. It was then approximately 1:45 A.M. Jo-Ann waited five minutes, took Alexis out of the car, locked the car and walked home. She called the Newton police.

At 3:37 A.M. officers of the Fall River police department, who had been alerted by radio, sighted a white, "'57 vintage" Volvo. They stopped the car and arrested the occupants. Bernier was driving; Medeiros was seated to his right on the front seat. The officers searched the vehicle and found, under the seat where Medeiros had been seated, a loaded revolver, a cap, a spotted handkerchief tied into a makeshift mask, a pair of gardener's gloves, and an envelope with Jo-Ann's name written on it.[2] Jo-Ann identified the cap, mask, and gloves as having been worn by the man who robbed her, the envelope as the one she had given him, and the gun as the one he had used. The officers also found eighteen bullets in the open ashtray on the dashboard of the Volvo. It was agreed that the Volvo was owned by Bernier and was registered to him in California. It bore California plates.

Bernier concedes that there was ample evidence to support the verdicts of guilty which the jury returned against him on all the indictments. That evidence logically requires a finding that someone had accompanied Bernier in the white Volvo. When Bernier ran toward Jo-Ann's car in her driveway someone other than Bernier drove the Volvo away and then parked it a short distance from the place where Bernier had compelled Jo-Ann to park her Volkswagen and where Bernier committed the armed assaults and robbery.

We consider first Medeiros' contention that he was en-

---

[2] Jo-Ann had testified that the spotted handkerchief, which Bernier had on his face when he entered her car, was removed from his face shortly thereafter. The Commonwealth filed a nolle prosequi to so much of the robbery indictment as charged "while masked and disguised."

titled to a directed verdict of not guilty on each of the indictments against him. The contention raises two inquiries: (1) was the evidence sufficient to submit to the jury the question whether Medeiros was the operator of the Volvo when Bernier was engaged in his criminal activities in Newton, and, if the answer is in the affirmative, (2) was the evidence sufficient to submit to the jury the question whether Medeiros' participation was such as to make him a principal with Bernier in the commission of the five crimes against Jo-Ann and Alexis.

The evidence by which both questions must be resolved is circumstantial. The probative value of circumstantial evidence has been frequently referred to and need not be restated at length. *Commonwealth* v. *Swartz*, 343 Mass. 709, 712. *Commonwealth* v. *O'Brien*, 305 Mass. 393, 400–401. *Commonwealth* v. *Bonomi*, 335 Mass. 327, 355–356. It is not essential that the inferences drawn from facts or circumstances be necessary inferences. *Commonwealth* v. *Doherty*, 137 Mass. 245, 247. It is enough if the inferences drawn from the circumstances be reasonable and possible. *Commonwealth* v. *Merrick*, 255 Mass. 510, 514. It is not necessary to prove that no one other than the accused could have done the act. *Commonwealth* v. *Leach*, 156 Mass. 99, 101–102. *Commonwealth* v. *Dawn*, 302 Mass. 255, 263. *Commonwealth* v. *Fancy*, 349 Mass. 196, 200. That another might have had the opportunity to do the act goes only to the weight of the evidence. *Commonwealth* v. *Richmond*, 207 Mass. 240, 247. The weight of the evidence is for the jury. *Commonwealth* v. *Swartz*, 343 Mass. 709, 713.

We follow these guides in the resolution of the pending inquiries. Indisputably Medeiros was in the passenger's seat beside Bernier at 3:37 A.M. when the police stopped the car and arrested them in Fall River. The car was proceeding in a direction away from Newton. Bernier and another person had been in Newton in the same car slightly more than an hour and forty-five minutes before the arrests. According to the approximations of time given by Jo-Ann, one hour and forty-five minutes had elapsed from the time she

first was aware in Fall River that the Volvo was following her to the time after the crimes in Newton when Bernier walked toward the Volvo where another person, Bernier's "buddy," had driven it. There was of course the possibility that at some point between Newton and Fall River, the other person had left the Volvo and his place taken by Medeiros. This possibility, however, did not require the judge to deny the jury the opportunity to pass upon the question whether, in light of probabilities, Medeiros was with Bernier in Newton and, indeed throughout the trip, since the "buddy" Bernier expected to find in Newton was, inferably, the same "buddy" who had ridden with him from Fall River. The jury, by their verdict, resolved the question against Medeiros.

The jury likewise could reasonably infer that the two men were acting in concert for the commission of a crime or crimes, and that the nature of Medeiros' participation made him a principal with Bernier. The jury had a right to infer that having deliberately trailed Jo-Ann's car from Fall River to Newton, the men stopped the Volvo close to her dwelling, that Medeiros saw Bernier leave the Volvo with a spotted handkerchief over his lower face and a gun in his gloved hand and run to Jo-Ann's car, that Medeiros drove the Volvo from the stopping point, and parked it where it would be conveniently accessible to drive Bernier away from the scene of the assaults, that Medeiros saw Bernier return to the Volvo and observed him then or later put the gun, gloves, handkerchief and jacket with envelope under the passenger's seat, and that the men then proceeded to Fall River. These inferences under familiar principles which were fully expounded to the jury would sustain verdicts that made Medeiros guilty with Bernier as a principal. *Commonwealth* v. *Cline*, 213 Mass. 225, 226. *Commonwealth* v. *Lavery*, 255 Mass. 327, 333, and cases cited. *Commonwealth* v. *Conroy*, 333 Mass. 751, 755, and cases cited. *Commonwealth* v. *Chapman*, 345 Mass. 251, 255. The circumstance that the two men followed a young matron for such a long distance after midnight did not require the jury

to infer that their sole criminal purpose was to rob her of whatever money she had.

There was no error in denying Medeiros' motion for a directed verdict on any of the indictments.

The only other assignment of error argued by Medeiros is based on an exception taken to that portion of the judge's charge relating to the indictment alleging that Medeiros had under his control in a vehicle a firearm without a permit. No request for instructions on the point had been filed by Medeiros. The exception was taken at a bench conference with counsel. The judge inquired, "Do you want me to change that in any way?" The district attorney replied, "No." Counsel for Medeiros said nothing. The instructions on their face appear to be adequate and accurate as applied to the evidence before the jury. In any event, having filed no requests and having failed to call the judge's attention to any omission or to suggest any amendment, Medeiros has now no standing under a general exception to the portion of the charge to urge upon us alleged infirmities in the charge. *Commonwealth* v. *Meserve*, 154 Mass. 64, 75. *Commonwealth* v. *Chapman*, 345 Mass. 251, 255–256.

Bernier's only argued assignment of error is that the pretrial judge erred "[b]y denying . . . [his] motion for the appointment of a psychiatrist to be chosen by . . . [him] and paid for by the Commonwealth." The transcript of the two hearings relating to this matter is before us. It appears that on February 10, 1967, counsel who had been pressing for a speedy trial for Medeiros requested on Bernier's behalf that a psychiatrist designated by him, or from a list prepared by him, be approved by the court to assist in Bernier's defence, or alternatively, that counsel be permitted to select a psychiatrist from a list prepared by the court. Two reports from the State Hospital at Bridgewater already were on file. The prosecution took no position on the proposals except to say that the two cases should be tried together. The judge closed the February tenth hearing with the comment, "I'll have another psychiatrist examine him. And after the report comes in, I'll hear you further on the

motion." The judge appointed a qualified psychiatrist who examined Bernier and filed a full report dated February 15, 1967. On February 20, 1967, counsel requested that Bernier be given the right to choose a psychiatrist acceptable to the court. The request was denied. There was no error. Bernier does not question the qualifications of the psychiatrist appointed by the judge. The report of the psychiatrist was available to him. The defence of insanity was not raised at the trial. Bernier did not call the psychiatrist as a witness at the trial, although he did call him on the question of disposition.

Bernier cites no authority for the proposition that an indigent defendant has the right to name the psychiatrist to assist him in his defence at the Commonwealth's expense. Some valid reasons for not starting the practice are suggested in *McGarty* v. *O'Brien, Warden,* 188 F. 2d 151, 157 (1st Cir.), cert. den. 341 U. S. 928. We see no reason for inaugurating a policy in the designation of psychiatrists to assist in the defence which would be different from the established policy in the designation of counsel to conduct the defence. See *Commonwealth* v. *Drolet,* 337 Mass. 396, 400–401.

*Judgments affirmed.*