COMMONWEALTH vs. ROBERT L. PETTIE.

Suffolk.    April 2, 3, 1973. — July 16, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & KAPLAN, JJ.

*Practice, Criminal,* Argument by counsel, Comment by judge, Charge
   to jury.

In a manslaughter case, a comment by the judge that a medical ex-
   aminer and the police department were not on trial, which in-
   terrupted defence counsel's closing argument, did not prejudice
   the jury, where defence counsel had made repeated allegations
   unwarranted by the evidence that the authorities had dealt un-
   fairly with the defendant and where the judge gave various in-
   structions emphasizing that all decisions of fact were within the
   sole province of the jury. [839–842]
Extemporaneous remarks made by a judge during his charge, ap-
   parently in an effort to simplify the meaning of "reasonable
   doubt," did not mislead the jurors as to the Commonwealth's bur-
   den of proof. [842–843]

INDICTMENT found and returned in the Superior Court
on November 13, 1970.

The case was tried before *McLaughlin,* C.J.

*Albert L. Hutton, Jr.,* for the defendant.

*Louis M. Nordlinger,* Assistant District Attorney, for
the Commonwealth.

HENNESSEY, J.   This is an appeal by the defendant
under G. L. c. 278, §§ 33A–33H, after trial on an indict-
ment charging him with murder in the first degree on
which a jury returned a verdict of guilty of manslaughter.

On October 4, 1970, at 4:00 A.M., a call was received at
Boston City Hospital for an ambulance to go to a certain
address in Roxbury.   One Gallagher, the ambulance
driver, and one Morris, the ambulance medical aide,
arrived at the premises about 4:50 A.M.   The defendant,
who had called for the ambulance, met them in front of
the building and led them up to the second floor where he
told them, in effect, that his girl friend had taken an over-
dose of pills.   Morris, the medical aide, found the body

of the deceased woman lying on a couch in the apartment. He checked and found no vital signs. When the question of an overdose of drugs was being discussed, the defendant went into the bedroom and returned with two empty vials bearing the designations "BCH" and "Harrison Pharmacy." These were turned over to the police shortly thereafter.

The defendant and the deceased woman had been living together at the Roxbury address for about two and a half months next prior to the date of her death. They were not married to each other.

The Commonwealth contended that the cause of the woman's death was "manual strangulation." The defendant contended that death resulted from a self-administered overdose of a drug called Noludar, possibly combined with Darvon and alcohol. The two drugs had been prescribed for the alleged victim by a doctor at the Boston City Hospital, the prescription having been filled at the Harrison Pharmacy on September 30, 1970, four days before the woman's death. One prescription was for thirty capsules of Noludar, 300 milligrams each, and a second for thirty capsules of Darvon compound 32. The Noludar was to be taken one a day for sleep and the Darvon to be taken as needed for pain.

Dr. George W. Curtis, Suffolk County medical examiner, testified that he performed an examination and autopsy on the deceased at approximately 1 P.M. on October 4, 1970. He described various black and blue marks which he found on the body of the deceased on the left side of the breast, the left shoulder, the back of the left hand and on the upper and lower parts of the left leg. He said he had observed eight superficial abrasions on the side of the neck and four linear bruises on the left lateral neck under the jaw. He then described a marked hemorrhage which he observed in the internal part of the throat beneath the external marks previously referred to, and added that he found the lungs heavy with fluid and water. He testified that, in his opinion, the deceased "came to her death as a result of asphyxia by manual

strangulation, homicide." The doctor said, in substance, that this opinion was based upon the marks he observed on the woman's neck, the massive hemorrhage he observed internally in her throat, and the fact that the lungs were heavy with blood and fluid.

There was evidence from which the jury could conclude that the deceased woman's blood contained .14 per cent alcohol and (from the defendant's testimony and the evidence of a prescription) that she had ingested 26 Noludar capsules. Dr. Goodof, a pathologist, stated his opinion that that combination of circumstances would be expected to produce death. He further testified that the finding of wet, heavy lungs could have been produced by severe depression of the nervous system by drugs as well as asphyxia from strangulation. There was other evidence that a person who dies from an overdose of sleeping pills or sedatives actually dies from asphyxiation.

The Commonwealth presented as a witness, John J. McHugh, a chemist who was chief of the laboratory at the Department of Public Safety. He testified that specimens from the woman's urine, blood, bile, and stomach contents were turned over to him for analysis on October 5, 1970, by the medical examiner, Dr. Curtis. On the following day the two empty pill bottles, referred to earlier, were likewise turned over to him. The labels on these bottles indicated that one bottle had contained thirty Noludar capsules and the other, thirty Darvon capsules, and that the contents had been prescribed for the woman on September 30, 1970. McHugh testified that, despite the fact that these specimens had been sent to him along with the empty pill bottles, he nevertheless did not conduct a test to determine whether the deceased had ingested a quantity of Noludar. He said that he threw the stomach contents and the bottles away.

In its effort to show that, if the woman died as the result of manual strangulation, the defendant was the only person who had the opportunity to do it, the Commonwealth offered evidence through police officers relative to the condition of the doors and windows in the apart-

ment.   One officer testified that on October 5 and 6 he observed undisturbed dust on the windowsills.   He described the doors leading into and out of the apartment and the locks thereon.   On cross-examination of this officer, evidence was adduced which tended to show that the officer was in error concerning his testimony about a door which led from the kitchen out to the rear hallway.   Comparison of photographs which the officer had taken, and which he contended showed both sides of the door, indicated that the pictures did not in fact depict opposite sides of the same door.

The defendant argues two assignments of error: one which relates to a comment the trial judge made during defence counsel's closing argument to the jury, and another which alleges error in the trial judge's instructions to the jury on the issue of reasonable doubt.

1. We consider first the assignment of error argued by the defendant as related to a comment which the trial judge interposed during defence counsel's closing argument to the jury.   There was no error.

Early in his closing argument the defendant's attorney made references to some law enforcement authorities perhaps having an "axe to grind," and to some persons who "may have harbored some interest and tried to do a little patchwork."   He then argued at some length as to the uncertainty of the police investigation concerning the doors and windows, and security in general, of the apartment.   He emphasized the alleged police error as shown in the photographs of the door.   He referred to "sloppy" investigation and asked the jury if the police procedure was "fair" to the defendant.   He argued at even greater length as to the failure of the Commonwealth to make tests upon the body, and particularly the stomach contents, for the presence of harmful drugs.   His emphasis at times was upon the knowledge by the police of the defendant's contention concerning drugs as the cause of death from the very beginning of the case, as corroborated by the empty pill bottles.   He stressed the fact of the Commonwealth's exclusive control over the body of

the deceased. At several junctures he raised the question as to whether the authorities were "fair" to the defendant, or whether the defendant was dealt with "fairly."

The judge at this point interrupted the argument. There had been no objection by the assistant district attorney. The following colloquy then took place within the hearing of the jury: THE JUDGE: "Mr. Hutton, I think I have to advise you that neither Dr. Curtis nor the expertise of the Boston Police Department is on trial." COUNSEL FOR THE DEFENDANT: "I respectfully take exception to your Honor's remarks." THE JUDGE: "Your exception is noted."

The defendant argues that in this case it was proper for defence counsel to point out what the medical and scientific experts did or failed to do, as well as to point out the discrepancies shown to have existed in the testimony of police as to the security conditions in the apartment. He further argues that the judge's interruption of counsel, while he was engaged in arguing along this line, must necessarily have been interpreted by the jury as a ruling that defence counsel's attack upon the testimony of the Boston police and the scientific and medical experts of the Commonwealth was not in accordance with the law and was not, therefore, fair and legal argument, and the jury should disregard the argument.

On the other hand, the Commonwealth argues that the trial judge properly interrupted immediately after one of a series of unwarranted and impermissible assertions by the attorney as to the lack of fairness and integrity of the government officials.

Great latitude should be permitted to counsel in argument. Nevertheless the scope of his presentation must remain within the bounds of the evidence and the fair inferences from the evidence. *O'Neill* v. *Ross*, 250 Mass. 92, 96–97. *Hart* v. *Morris & Co.* 259 Mass. 211, 214. *National Shawmut Bank* v. *Hallett*, 322 Mass. 596, 601. *Jensen* v. *McEldowney*, 341 Mass. 485, 487–488. *Leone* v. *Doran, ante*, 1, 18. The arguments of counsel addressed to the issue of police uncertainty concerning

security of the apartment, and the failure of the author-
ities to test for the presence of drugs (particularly No-
ludar) were both permissible and substantial. However,
counsel's repeated comments that the authorities were
not "fair," had an "axe to grind," and "harbored an in-
terest" in the case were not warranted on any view of the
evidence or its fair inferences.

We conclude, from an examination of the entire argu-
ment and the colloquy which interrupted the argument,
that it was clear to the jury that the judge's comment
was addressed only to the objectionable and unwarranted
portions of the argument. The judge's remark came im-
mediately following defence counsel's second recital of
the question, "[H]ave they [the government authorities]
dealt fairly with him [the defendant]?" This question
was the last in a series of five questions in effect which
asserted, with no evidence to support the suggestions, a
lack of integrity and veracity in the government officials
who were involved in the case. There were other state-
ments interspersed in the argument which similarly and
impermissibly challenged the motives of the authorities.
This repetitive approach was such that, considering also
the precise point in the argument where the judge inter-
rupted with his comment, the jury undoubtedly concluded
that the judge was referring only to the impermissible
portions of the argument when he cautioned counsel that
the authorities were not on trial. In such circumstances
it is not only appropriate for the judge to interrupt and
correct the argument, but he may have a duty to do so.
See *Commonwealth* v. *Sherman,* 294 Mass. 379, 391;
*Commonwealth* v. *Witschi,* 301 Mass. 459, 462; *National
Shawmut Bank* v. *Hallett,* 322 Mass. 596, 601; *Common-
wealth* v. *Lewis,* 346 Mass. 373, 379; *Commonwealth* v.
*Fleming,* 360 Mass. 404, 409. *Commonwealth* v. *Kinney,*
361 Mass. 709, 711.

Further assurance that the jury correctly understood
the purpose of the judge's comment upon the argument of
counsel is found in the judge's subsequent instruction to
the jury. Included in the charge were an instruction that

it was the jury's duty to decide upon the truthfulness of the expert witnesses' testimony, and an instruction that both counsel's arguments were important and should be used where helpful. Further, there was emphatic language which clearly placed all decisions of fact in the sole province of the jury.[1]

2. The defendant's second argument relates to the judge's instructions to the jury on reasonable doubt, which the defendant contends lessened the government's burden of proof. He does not attack the major portion of the charge, but rather some added remarks by the judge, apparently made in an effort to simplify the meaning of reasonable doubt for the jurors.[2] The defendant contends that these remarks suggested to the jurors that a reasonable doubt is one which arises naturally and spontaneously in the mind to the exclusion of a doubt which arises only after deep and thoughtful consideration of the evidence. Compare *Boughan* v. *State,* 193 Ind. 66.

We disagree that these remarks could have had any such effect. The judge specifically told the jury to consider all the evidence. It is true that we have said that "explanation of 'reasonable doubt,' we think, is usually best made in close reliance on the time-tested language of *Commonwealth* v. *Webster,* 5 Cush. 295, 320." *Commonwealth* v. *Gerald,* 356 Mass. 386, 390. Extemporaneous or "short-form" instructions, particularly if there is any language of instruction which may impel the jury to

---

[1] That language was as follows: "Now, during the course of the trial you may have had some impression that I have some idea as to how you should decide this case by the manner in which I conducted the trial, the manner in which I made rulings, or in my instructions to you whether I single out and made remarks about any portion of the evidence. All I say to you gentlemen is that the sole responsibility for decision is yours. I don't assume it nor attempt to assume it. So you decide the case on the evidence wherein you find the truth and the proper weight of the evidence to be."

[2] After reading language found in material appearing as a preface to the opinion in *Commonwealth* v. *Madeiros,* 255 Mass. 304, 307–308, the judge added some other thoughts. The language objected to follows: "Now that is technical legal language. I want you to know what a reasonable doubt is in simple language. . . . If a reasonable doubt is present, it's going to be such a persistent, pervading thing in your mind you won't be able to escape its consideration."

accept them as a total substitute for the more precise and formal instructions, may well give rise to a lessening of the Commonwealth's burden of proof as it is understood by the jurors. Nevertheless, the charge should be viewed as a whole in trying to determine the propriety of any given portion rather than viewing fragmentary instructions out of context. Viewed in that manner, the instructions here were comprehensive and adequately conveyed the concept of reasonable doubt to the jury. *Commonwealth* v. *Bumpus,* 362 Mass. 672, 681–682. *Commonwealth* v. *Aronson,* 330 Mass. 453, 457. *Commonwealth* v. *Pinnick,* 354 Mass. 13, 15.

*Judgment affirmed.*