COMMONWEALTH *vs.* GEORGE JOSEPH MONTECALVO.

Suffolk.   November 5, 1974. — February 21, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Homicide.   Practice, Criminal,* Selection of jury, Judicial discretion,
Argument by counsel, Comment by judge.   *Evidence,* Of con-
sciousness of guilt; Opinion: expert.   *Statute,* Construction.

At a murder trial not involving the death penalty, examination by the
judge of prospective jurors as a group to determine their interest,
bias or prejudice rather than interrogation on an individual basis
was not an abuse of discretion nor was it contrary to G. L. (Ter.
Ed.) c. 234, § 28, or unconstitutional.   [48-50]
Failure of the judge at a murder trial to have the oath administered
to prospective jurors before conducting interrogations to determine
interest, bias or prejudice pursuant to G. L. c. 234, § 28, was not
reversible error where the failure to administer the oath did not
prejudice the defendant.   [51]
Testimony at a murder trial by a friend of the victim's mother re-
garding telephone calls she received from the defendant shortly
after the victim was hospitalized in which the defendant inquired
how the victim was doing and whether his clothes had been found
was properly admitted to show consciousness of guilt.   [51-52]
There was sufficient evidence of the cause of the victim's death to
submit that issue to the jury at a murder trial where three medical
experts testified that death was caused by an attempted strangula-
tion which occurred about three months before death, and one
medical expert testifying for the defendant ascribed as the cause
of death a disease unrelated to the strangulation.   [53-54]
Testimony at a murder trial, that the defendant was with the victim
shortly before the victim was found naked and in a battered condi-
tion, that the defendant was familiar with the area where he was

found, that the defendant was absent from work on the day of the incident, and that after the victim was hospitalized the defendant made frequent telephone calls to inquire how he was doing and whether his clothes had been found, was sufficient for submission of the case to the jury; the Commonwealth was not required to prove that no one other than the defendant could have brought about the victim's death.   [54-56]

At a murder trial, where the judge had informed defense counsel that argument on a particular point would not be permitted, but that counsel persisted in pursuing the point in his closing argument, interruption of the argument by the judge and a caution by him to the jury to disregard that portion of the argument was not an abuse of discretion or erroneous.   [56-57]

INDICTMENT found and returned in the Superior Court on September 7, 1973.

The case was tried before *Ford, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*John A. Pino* for the defendant.

*William J. Doyle,* Assistant District Attorney, for the Commonwealth.

TAURO, C.J.   The defendant appeals, pursuant to G. L. c. 278, §§ 33A-33G, from a conviction of murder in the second degree on an indictment charging him with murder in the first degree.   We affirm.

The evidence pertinent to the issues is as follows: On February 16, 1973, sometime after 4 P.M., a first floor tenant at 124 Walnut Street, Chelsea, heard moaning sounds coming from the direction of the cellar.   Accompanied by her husband, who had taken a flashlight, the tenant went to the cellar where she observed a boy lying naked, face down, on the floor.   She immediately went upstairs and told her landlady, who called the police.

The police arrived promptly in response to a call received at 4:31 P.M.   They found the boy, later identified as the victim, lying on the floor.   He was conscious, but his naked body was clammy and cold.   There were no

clothes in the vicinity, and neither the boy's clothing, nor the bag of groceries he was carrying when last seen, were ever found. The victim was taken to Chelsea Memorial Hospital, where it was observed that he had abrasive, rope-like marks on the left side of his neck and bruises or other marks on his ankles and buttocks.

The victim remained at Chelsea Memorial Hospital for a few days and was then discharged. Shortly thereafter, his condition began to deteriorate markedly, and he was taken by his mother to the school nurse. The nurse immediately arranged for a doctor's examination, and, as a result, he was taken to Massachusetts General Hospital, where he remained until his death in May, 1973.

The victim was last seen in the company of the defendant. An eighth grader living in the neighborhood observed the victim and the defendant together in front of 124 Walnut Street shortly after 3 P.M. A detective on undercover drug duty, who had been making a surveillance of the area, observed the defendant and the victim on the front porch of 124 Walnut Street, walking into the doorway, at approximately 3:45 P.M. The victim was discovered shortly after 4 P.M.

The cellar in which the victim was found was part of a six-family dwelling that was fully occupied at the time of the incident. The defendant lived with his mother and step-father on the top floor. The cellar was open to all tenants, and in fact some (but not the defendant's family) stored fuel oil there. The cellar was locked with a hook and eye, which could be easily opened from the outside.

1. The defendant assigns as error the trial judge's refusal to interrogate each prospective juror individually with regard to the "statutory questions" authorized by G. L. c. 234, § 28.[1] At the beginning of the trial, the

---

[1] General Laws, c. 234, § 28, reads in pertinent part: "Upon motion of either party, the court shall . . . examine on oath a person who is called as a juror therein, to learn whether he is related to either party or has any interest in the case, or has expressed or

judge expressed his intention to have the statutory questions asked of the jurors as a group, as was the accepted practice in noncapital cases. Defense counsel objected, asserting that the statute, speaking as it does in the singular, commands individual interrogation of each juror as he is called. The judge, while recognizing that this had been the practice in capital cases, *Commonwealth* v. *Ventura*, 294 Mass. 113 (1936), reasoned that this practice evolved from the need to question each juror regarding his views about the death penalty, see G. L. c. 278, § 3, and that, since this particular questioning was no longer required in light of the fact that the jury no longer plays a role in determining whether such penalty shall be imposed, *Furman* v. *Georgia*, 408 U. S. 238 (1972), neither was individual interrogation. There was no error in the judge's analysis.

Although c. 234, § 28, speaks in terms of "the juror" and "a person," we do not read the statute as requiring individual interrogation. This construction is supported by G. L. c. 4, § 6, Fourth, which allows words expressed in the singular to "extend and be applied to several persons or things." Our reading of § 28 is also in accordance with generally accepted rules of statutory construction. See Sands, Sutherland Statutory Construction, § 47.34 (4th ed. 1973). Thus, reference to "the juror" does not require interrogation of each prospective juror individually, but contemplates questioning "the jurors" as a group as well.

This conclusion is further bolstered by reference to the 1973 amendment to c. 234, § 28, which provides for further examination of prospective jurors where certain circumstances are present. Statute 1973, c. 919, inserted a second paragraph in the section, which describes the

---

formed an opinion, or is sensible of any bias or prejudice, therein; and the objecting party may introduce other competent evidence in support of the objection. If the court finds that the juror does not stand indifferent in the case, another shall be called in his stead."

content of the additional examination and then states that it "shall be conducted individually and outside the presence of other persons about to be called as jurors or already called." Although not itself applicable to the instant case, the amendment is relevant to show that, where the Legislature intends individual interrogation, "it has expressly stated its intent in clear and unambiguous language." *Wood* v. *Commissioner of Correction*, 363 Mass. 79, 82 (1973). The absence of such "clear and appropriate language" in § 28 as originally enacted leads us to the conclusion that individual interrogation was not intended in the circumstances covered by that section. *Wood* v. *Commissioner of Correction*, *supra*. See Sands, Sutherland Statutory Construction, § 51.02 (4th ed. 1973).

We have considered the defendant's contention that individual questioning is necessary, despite the fact that the death penalty questions are no longer required. He argues that in cases of murder in the first degree defendants should have the opportunity to observe prospective jurors as they answer the judge's questions in order to get some insight into the makeup of the particular jurors. We reject this argument as supported neither by statute nor constitutional mandate. The purpose of § 28 is "to determine whether . . . [the prospective jurors] are free from interest, bias and prejudice." *Commonwealth* v. *Beneficial Fin. Co.* 360 Mass. 188, 295 (1971), cert. den. sub nom. *Farrell* v. *Massachusetts*, 407 U. S. 910 (1972), and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U. S. 914 (1972). The procedure adopted by the judge below accomplished this purpose, while in no way violating the express terms of the statute. Accordingly, we hold that it was not an abuse of discretion for the judge to have conducted the examination in this manner.[2]

---

[2] This is not to say that the procedure used in the instant case is the only acceptable one. Individual questioning of prospective jurors may be required where the facts and circumstances of a particular

The defendant raises here for the first time the fact that the interrogation was not conducted under oath, as required by the statute. He claims that this entitles him to a new trial. We disagree. Assuming this issue to be properly before us, we find no merit in the defendant's contention. "Under G. L. c. 234, § 32, an irregularity in the empanelling of jurors is not sufficient to set aside a verdict unless the objecting party has been injured thereby." *Commonwealth* v. *McKay*, 363 Mass. 220, 223 (1973). Thus, the defendant must show that he was prejudiced by the failure to have the oath administered before questioning of the prospective jurors. There is no indication in the record of such prejudice. *Commonwealth* v. *Cero*, 264 Mass. 264, 271 (1928). *Commonwealth* v. *Guerro*, 357 Mass. 741, 756 (1970).[3]

2. There was no error in the admission of testimony by a friend of the victim's mother regarding telephone calls she received from the defendant shortly after the victim was taken to the hospital. The friend testified that she received the first call within a day or two of the incident; possibly, but no later than, Monday. She stated that this was the first time the defendant had ever called her, although she was quite friendly with the defendant's mother and had spoken to her on the telephone on numerous occasions. In the first call, the defendant asked how the victim was doing and whether his clothes had been found. The friend testified that she received "[m]any, many" calls from the defendant, often when

---

case warrant it. One such example would be where racial prejudice is claimed. See *Commonwealth* v. *Ross*, 363 Mass. 665 (1973). We merely decide that the judge's exercise of discretion in this case did not constitute reversible error.

[3] As a general rule, in the absence of impingement on constitutional rights or error of law such as an abuse of discretion, we will not interfere with the actions of the trial judge in the jury selection process. *Commonwealth* v. *McKay*, 363 Mass. 220, 223 (1973). Cf. *Commonwealth* v. *Nassar*, 354 Mass. 249, 252-255 (1968).

the victim's mother was present in her home. In all of these calls, the defendant asked questions regarding the victim, and particularly whether his clothing had been found.

Actions and statements that indicate consciousness of guilt on the part of the defendant are admissible and together with other evidence, may be sufficient to prove guilt. *Commonwealth* v. *Webster,* 5 Cush. 295, 316-317 (1850). *Commonwealth* v. *Bonomi,* 335 Mass. 327, 346-348 (1957). *Commonwealth* v. *Curry,* 341 Mass. 50, 55 (1960). *Commonwealth* v. *Swartz,* 343 Mass. 709, 712-713 (1962). Although this theory usually has been applied to cases where a defendant runs away, *Commonwealth* v. *Corcoran,* 332 Mass 615, 619 (1955); *Commonwealth* v. *Geagan,* 339 Mass. 487, 512 (1959), cert. den. 361 U. S. 895 (1959); *Commonwealth* v. *Carita,* 356 Mass. 132, 140 (1969), or makes intentionally false and misleading statements to police, *Commonwealth* v. *Trefethen,* 157 Mass. 180, 199 (1892); *Commonwealth* v. *Spezzaro,* 250 Mass. 454, 457 (1925); *Commonwealth* v. *Bonomi, supra*; *Commonwealth* v. *Curry, supra,* or makes threats against key witnesses for the prosecution, *Commonwealth* v. *Smith,* 162 Mass. 508, 509-510 (1895), it is equally applicable to the instant case. The jury properly could have found, under the careful and limiting instructions given by the judge during the course of this testimony and again in his charge, that the defendant's inordinate interest in the case, and particularly in whether the victim's clothing had been found, indicated a consciousness of guilt. This is especially true in light of the fact that the defendant had never called this woman before, and from the testimony it could be inferred that he purposely called when the victim's mother was present, perhaps hopeful of obtaining additional information through that source. Accordingly, there was no error in the admission of this testimony.

3. The defendant assigns as error the denial of his motion for a directed verdict of not guilty on the ground

that there was insufficient evidence to warrant submission of the case to the jury. G. L. c. 278, § 11. *Commonwealth* v. *Perry*, 357 Mass. 149 (1970). There are two aspects to this claim; that there was insufficient evidence to go to the jury (a) on the issue of cause of death, and (b) on the question whether it was the defendant who committed the assault that led to the death of the victim. We discuss these arguments individually.

A. *Medical Issue.* The Commonwealth introduced extensive medical testimony that the cause of death was anoxic encephalopathy, or damage to the brain caused by lack of oxygen. Dr. Elizabeth C. Dooling, the attending physician at the Massachusetts General Hospital, stated that the victim died as a result of an injury causing considerable brain damage, probably as a result of the alleged strangulation he suffered on February 16. Both Dr. George Katsas, associate medical examiner in Suffolk County, who performed the autopsy on the victim, and Dr. Edward P. Richardson, Jr., in charge of neuropathology at Massachusetts General Hospital, corroborated Dr. Dooling's testimony.

The death certificate, which was introduced in evidence, described the cause of death as "anoxic encephalopathy with terminal bronchopneumonia." The death certificate was signed by Dr. Katsas, who testified that death followed "strangulation by ligature."

The defendant called one expert medical witness, who disputed the cause of death. Dr. Kittredge Anderson, a physician specializing in neurology, testified that he did not believe the cause of death was related to the alleged strangulation. He gave six reasons for his conclusion. Further, he stated that he believed it was as likely that the victim died as a result of Wilson's disease, a disorder involving excess copper in the body. On cross-examination, Dr. Anderson admitted that the pathological findings of the victim's brain were consistent with Dr. Dooling's conclusions. He further admitted that the liver of one suffering from Wilson's disease would have an

elevated copper count, and that the autopsy on the victim revealed a normal liver.

Each of the prosecutor's expert medical witnesses discussed the possibility of Wilson's disease as the cause of death, and each rejected it. They based their conclusions on the evidence that there was no liver damage, and that the injury to the brain here differed slightly from that usually found in Wilson's disease.

It is well settled that the weight and effect of the evidence is a matter wholly within the province of the jury. *Commonwealth* v. *Hoyt,* 279 Mass. 400, 407 (1932). *Commonwealth* v. *Swartz,* 343 Mass. 709, 713 (1962). *Commonwealth* v. *Medeiros,* 354 Mass. 193, 197 (1968). This is no less true because the testimony involved is that of expert witnesses. *Commonwealth* v. *Smith,* 357 Mass. 168, 178 (1970). Ordinarily where expert medical witnesses differ, there is a jury issue. *Commonwealth* v. *Francis,* 355 Mass. 108, 111 (1969). *Commonwealth* v. *Fleming,* 360 Mass. 404, 407-408 (1971). There was clearly a difference of opinion among expert witnesses here presenting a jury issue. Accordingly, there was no error in the judge's refusal to direct a verdict on this issue.

B. *Sufficiency of the Evidence.* There was sufficient evidence for submission of the case to the jury on the issue of the defendant's guilt. Although the evidence in this case was circumstantial, the probative value of such evidence has never been seriously questioned. *Commonwealth* v. *Webster,* 5 Cush. 295, 319 (1850). *Commonwealth* v. *O'Brien,* 305 Mass. 393, 400-401 (1940). *Commonwealth* v. *Swartz,* 343 Mass. 709, 712 (1962). *Commonwealth* v. *Medeiros, supra.* When dealing with circumstantial evidence, it is not essential that the inferences drawn from facts or circumstances be necessary inferences. *Commonwealth* v. *Doherty,* 137 Mass. 245, 247 (1884). It is enough if the inferences drawn from the circumstances be reasonable and possible. *Common-*

*wealth* v. *Merrick*, 255 Mass. 510, 514 (1926). *Commonwealth* v. *Medeiros, supra.*

In the instant case, there were sufficient facts in evidence from which the jury could have found that the defendant was with the victim immediately prior to the victim's having been found strangled and naked. They were seen together entering the building in which the victim was found. It could be inferred, from the layout of the celler and the general inaccessability thereof, that the person who committed the offense was familiar with the area, and there was evidence that the defendant resided in the building. There was also evidence that the defendant was absent from work on the day of the incident, and that he only worked part of the following day.

This is not a case where, "upon all the evidence, the question of the guilt of the defendant is left to conjecture or surmise and has no solid foundation in established facts." *Commonwealth* v. *Fancy*, 349 Mass. 196, 200 (1965), quoting from *Commonwealth* v. *O'Brien*, 305 Mass. at 401 (1940). On the contrary, the fact that the defendant was the last person seen with the victim, at a time and place in close proximity to where the victim was shortly thereafter found in a battered condition, is probative evidence of the defendant's guilt. Furthermore, although not in themselves conclusive, the telephone calls to the friend of the victim's mother, if construed by the jury to indicate consciousness of guilt, could, "with other evidence, be sufficient to prove guilt." *Commonwealth* v. *Swartz*, 343 Mass. at 713 (1962), citing *Commonwealth* v. *Curry*, 341 Mass. at 55 (1960), and cases cited.

The defendant contends, however, that the Commonwealth has failed to exclude every other consistent hypothesis as to who was responsible for the death of the victim. Although this may be true, it is not necessary for the prosecution to do so in order to avoid a directed verdict against it. "It is not necessary to prove that no one other than the accused could have done the act. . . .

That another might have had the opportunity to do the act goes only to the weight of the evidence." *Commonwealth* v. *Lussier,* 364 Mass. 414, 421 (1973), quoting from *Commonwealth* v. *Medeiros,* 354 Mass. at 197 (1968). Accord, *Commonwealth* v. *Smith,* 350 Mass. 600, 607 (1966). As we have stated, the weight of the evidence is a question for the jury. *Commonwealth* v. *Medeiros, supra.* Accordingly, there was no error in the judge's refusal to direct a verdict for the defendant.

4. There is no merit to the defendant's contention that the judge erred in interrupting defense counsel's closing argument to the jury. During his argument, defense counsel embarked on a course that the judge, in the proper exercise of his discretion, deemed improper. In a prior bench conference, the judge had informed counsel that he would not allow argument on the particular point in question.[4] Accordingly, when defense counsel persisted, the judge interrupted and cautioned the jury to disregard that portion of the argument.

Although "[g]reat latitude should be permitted to counsel in argument," *Commonwealth* v. *Pettie,* 363 Mass. 836, 840 (1973), "[i]t is the duty of a judge sitting with a jury to guard against improper arguments to the jury. Whether he shall do this by stopping counsel in the course of such an argument, by instructing the jury to disregard such an argument, or by combining both methods, rests largely in the discretion of the judge." *Commonwealth* v. *Witschi,* 301 Mass. 459, 462 (1938). *O'Neil* v. *Ross,* 250 Mass. 92, 96-97 (1924). Accord, *Commonwealth* v. *O'Connell,* 274 Mass. 315, 323 (1931); *Commonwealth* v. *Sherman,* 294 Mass. 379, 391

---

[4]Defense counsel attempted to argue that evidence regarding the length of time between the commission of the offense and the arrest of the defendant could be introduced to show the state of mind of the police. He tried to argue that the delay indicated that the police had doubts about whether it was the defendant who committed the crime. The judge admitted the evidence, but refused to allow it to be used for the purposes suggested by defense counsel.

(1936). This is especially true where the judge has previously excluded the particular argument as improper. *Commonwealth* v. *Jasliwicz,* 361 Mass. 877 (1972). In the instant case, as in the *Pettie* case, 363 Mass. at 841 (1973), the record indicates that it was "clear to the jury that the judge's comment was addressed only to the objectionable and unwarranted portions of the argument." Such being the case, the interruption was not only appropriate, but may well have been required. Accordingly, there was no error.

5. Pursuant to the requirements of c. 278, § 33E, we have reviewed the entire transcript and record and have found no reason either to order a new trial or to direct a verdict of a lesser degree of guilt.

*Judgment affirmed.*