COMMONWEALTH vs. TYRONE SMITH.

Suffolk.    February 20, 1973. — December 31, 1973.

Present: ROSE, KEVILLE, & ARMSTRONG, JJ.

*Homicide.   Practice, Criminal,* Charge to jury.

A verdict of guilty of manslaughter was warranted by evidence and
    inferences that, although the defendant was threatened by the victim
    with a pistol, the defendant disarmed him without much trouble,
    that, contrary to testimony by the defendant, he was not then
    menaced by the victim with a knife, that the defendant then shot the
    victim several times with the pistol in a deliberate manner and killed
    him, and that in so shooting the victim the defendant became the
    attacker himself and used excessive force resulting in the victim's
    death. [643-645]
Where the judge at the trial of a criminal case gave an essentially
    complete and correct charge to the jury, he was not required to charge
    on particular possible states of fact or in the words of a request by the
    defendant. [645-647]

INDICTMENT found and returned in the Superior Court on
February 9, 1971.

The case was tried before *Taveira, J.*

*Robert V. Greco* for the defendant.

*Paul V. Buckley,* Assistant District Attorney (*Sandra Lee Hamlin,* Special Assistant District Attorney, with him) for the Commonwealth.

ROSE, J.    This appeal from a conviction for manslaughter comes before us under the provisions of G. L. c. 278, §§ 33A-33G. The defendant has assigned as error the trial judge's refusal to direct a verdict in his favor and to charge the jury in accordance with his requested instruction No. 3. Other matters assigned as error were not argued in the defendant's brief and are treated as waived. Appeals Court Rule 1:13.

Evidence was introduced at trial from which the jury

could have found the following. The defendant was friendly with one Barbara Gibbons, beginning in September, 1970, and continuing through December 26 of that year. Prior to the start of her relationship with the defendant, Gibbons had been friendly with one Vernon Dale, the deceased, and had resumed seeing him for a short period in November, 1970. On December 25, 1970, Dale telephoned Gibbons from his mother's house in Pennsylvania. In the course of the conversation, Dale became angry and told Gibbons that he would visit her apartment at noon the next day, December 26. He did not appear. That evening Dale telephoned again, this time telling Gibbons that he was coming over for "an understanding."

The defendant was present when Gibbons took the second call and remained at her apartment afterwards. When Dale arrived, some 45 minutes later, Gibbons did not want to admit him but did so on the defendant's orders. Dale walked in, pulled a pistol out of a paper bag which he was carrying, and approached the defendant. There ensued a scuffle in which the defendant, who was taller and larger than Dale, wrested the gun away from him and shot five or six times, inflicting three wounds upon Dale which caused his death.

Gibbons was in her son's bedroom when the shooting began; upon hearing the firing, she climbed out a window and went upstairs to a neighbor's apartment. A few minutes later the police were notified. At some point between the shooting and the arrival of the police the neighbor entered Gibbons' apartment and saw Dale lying on the living room floor with a knife by his left hand. The defendant was not present. A short time after the shooting the police arrived and took Gibbons' statement, which included a detailed description of the defendant. The following evening, December 27, the defendant contacted Gibbons and then visited her; later that night he gave himself up to the police.

1. The defendant testified in effect as follows. As a result of threats uttered by Dale in the course of the telephone call

on December 25,[1] he left Gibbons' apartment at the time
Dale was first due to visit. When Dale entered the apart-
ment on the evening of the 26th, he came in "like a wild
man"[2] and immediately drew a pistol. The defendant
disarmed him, but Dale then ran into another room and
returned with a knife. As Dale assaulted him, the defend-
ant, who had picked up the discarded pistol, backed into a
corner of the living room saying "please don't make me
shoot you." Dale, however, continued to attack and the
defendant shot him repeatedly. The defendant left the
apartment in a state of confusion, but turned himself in to
the police the following day.

Although the defendant's testimony, if believed, might
have created a reasonable doubt on the issue of justifica-
tion, the jury was not bound to take his version of the
incident at face value. See *Commonwealth* v. *Binnette,* 351
Mass. 704 (1966); *Commonwealth* v. *Leate,* 352 Mass. 452,
457 (1967). Although mere disbelief of the defendant's
testimony would not support a judgment of guilt, proof of
his criminal conduct could be established by circum-
stantial evidence and inferences drawn therefrom. See
*Commonwealth* v. *Swartz,* 343 Mass. 709 (1962). It is not
essential that such inferences be necessary or inescapable
(*Commonwealth* v. *Doherty,* 137 Mass. 245, 247 [1884];
*Commonwealth* v. *Ehrlich,* 308 Mass. 498, 500 [1941];
*Commonwealth* v. *Medeiros,* 354 Mass. 193, 197 [1968]),
merely that they be "reasonable and possible." *Com-
monwealth* v. *Merrick,* 255 Mass. 510, 514 (1926). *Com-
monwealth* v. *Medeiros, supra,* at 197.

In this instance the jury could have inferred from the
defendant's return to Gibbons' apartment on December 26
and his desire to have Dale admitted that he wished to

---

[1] The defendant's testimony on this point was inconsistent. In his statement to
the police and upon direct examination, he recalled Dale's threat as "I don't want
you there. You better be out of there before I get there." On cross-examination he
testified for the first time that Dale had threatened to "shoot" or "kill" both him
and Gibbons.

[2] In his statement to the police, the defendant said only that Dale "walked in
and . . . had his coat over his arm."

confront the deceased. From Gibbons' testimony that she had time to run only to her bedroom window before shooting broke out, together with the lack of any disruption of the room in which the shooting occurred, the jurors might have concluded that the defendant disarmed Dale with little struggle and shot him without first being menaced by a knife. Furthermore, testimony that the knife was found by the deceased's left hand (he was right handed), bare of "latent [finger]prints . . . of any value," tended not only to discredit the defendant's claim that he shot in self-defense, but also to show that he hid the nature of the shooting from the police, arguably out of feelings of guilt. The fact that the defendant did not give himself up to the police until the evening of the day following the shooting could also have been taken as evidence that he had a guilty state of mind.

There was testimony at the trial that the defendant fired five or six times and inflicted three wounds upon Dale. This evidence, together with testimony that the shots were spaced over a period long enough to permit Gibbons to climb out of a window and run to the door of the apartment house, a short distance away, gave rise to an inference that the defendant shot Dale in a deliberate manner. Finally, the fact that the deceased was found lying face down with his head pointing toward the bedroom door, and that a spent bullet fell out of the front of his jacket as he was lifted, supported an inference that the defendant used excessive force and shot Dale in the back as he attempted to flee the scene.

In our opinion there was ample evidence from which the jury "could conclude that the defendant himself became the attacker and [that] since death resulted from his use of excessive force, he [was] guilty of manslaughter." *Commonwealth* v. *Kendrick,* 351 Mass. 203, 211 (1966). See also *Commonwealth* v. *Smith,* 342 Mass. 180 (1961); *Commonwealth* v. *Connors,* 345 Mass. 102 (1962); *Commonwealth* v. *Smith,* 350 Mass. 600 (1966). The trial judge thus did not err in denying the defendant's motion for a directed verdict.

2. By his second assignment of error, the defendant

questions the failure of the trial judge to charge the jury in accordance with his requested instruction No. 3.[3] It is clear at the outset that the test of a charge is not any particular language but "the impression created by it as a whole." *Commonwealth* v. *Kelley,* 359 Mass. 77, 92 (1971). See also *Commonwealth* v. *Pinnick,* 354 Mass. 13, 15 (1968); *Commonwealth* v. *Richardson,* 354 Mass. 773 (1968). "While a defendant, in a criminal case, is entitled to have the issues of fact clearly presented to the jury and the law applicable thereto carefully explained, the method and extent of the charge must be left to the discretion of the judge." *Commonwealth* v. *Kelley, supra,* at 92, and cases cited. See also *Commonwealth* v. *Gliniecki,* 339 Mass. 464, 469 (1959); *Commonwealth* v. *Vanetzian,* 350 Mass. 491, 496 (1966).

In this instance the language of the defendant's requested instruction is derived in part from decisions of the Supreme Judicial Court and of the United States Supreme Court. See *Monize* v. *Begaso,* 190 Mass. 87, 89 (1906); *Commonwealth* v. *Houston,* 332 Mass. 687, 690 (1955); *Commonwealth* v. *Kendrick,* 351 Mass. 203, 211 (1966); *Brown* v. *United States,* 256 U.S. 335, 343 (1921). But we perceive of no reason why this fact should limit the trial judge's discretion in ruling on the defendant's request.

In this case the trial judge charged the jury at some length concerning the principles applicable to the defense of self-defense. He stated that "[f]or a person to have a right to defend himself with a dangerous weapon . . . [he must have a] reasonable apprehension of great bodily harm and a reasonable belief that no other means . . . would suffice" and concluded as follows: "[U]ltimately, it is for

---

[3] The requested instruction read as follows: "If you find from the evidence that the deceased Vernon Dale was himself armed with a knife or other dangerous weapon and assaulted or approached the defendant in a menacing manner and that, for the purpose of repelling such assault and threat, the defendant with a gun killed the deceased, then in determining if the defendant was justified in killing and acted in self-defense, the defendant's action is not to be judged with fineness and nicely, but you must give due regard to the infirmity of human impulses and passions and consider that detached reflection on the part of the defendant cannot be demanded in the presence of an uplifted knife or weapon of lethal character in the hands of his assailant."

the jury to determine whether or not this defendant was in a position of deep and grave apprehension as to the safety of his person and whether or not the means used by him at the time were reasonable for his own protection and safety or whether they were excessive and unreasonable and disproportionate as to the circumstances. This is a determination the jury must make from the evidence and from any reasonable inferences that you may draw from the evidence."

We conclude that "[t]he judge's charge, though general, was complete and correct in all essentials, including manslaughter. This being so, he was not required to charge on any 'particular possible states of facts' or to frame his instructions in a form requested by counsel." *Commonwealth* v. *Martorano,* 355 Mass. 790 (1969) and cases cited. See also *Commonwealth* v. *Monahan,* 349 Mass. 139, 170-171 (1965); *Commonwealth* v. *Smith,* 350 Mass. 600, 611 (1966); *Gelineau* v. *Massachusetts Bay Transp. Authy. post,* 815 (1973).

*Judgment affirmed.*