## COMMONWEALTH *vs.* BRIDGET HEFFRON.

The offence of keeping and maintaining a common nuisance, in violation of the Gen. § s. c. 87, § 7, is local, and its place must be proved as laid in the indictment.

On the issue whether a tenement is in one town or another, the location of the line between the two towns may be proved by the testimony of a person who lives near it and has run it when measuring his own land; without producing the records of perambulation by the selectmen.

The records, not ancient, of assessors are inadmissible, in suits between third parties, to prove the locality of real estate.

The conviction of a man for keeping and maintaining a tenement as a nuisance in violation of the Gen. Sts. c. 87, § 7, during a certain period, is no bar to the conviction of his wife for committing a like offence during the same time in the same tenement.

After conviction on an indictment for keeping and maintaining, as a common nuisance, a tenement used for the illegal keeping and sale of intoxicating liquors, a bill of exceptions was allowed by which it appeared that the defendant contended during the trial that there was no sufficient evidence that the tenement was in the place alleged, and also contended that the conviction of her husband for a like offence was a bar to her conviction; that the judge ruled that such conviction of her husband was no bar, and that, if the jury found the tenement to be in the place alleged and that the defendant used the premises in question for the illegal keeping and sale of intoxicating liquors within the period mentioned in the indictment, and not coerced by her husband, they might find her guilty; and that the defendant excepted generally to these rulings. *Held,* that it was not open to the defendant on this bill of exceptions to raise the objection that the ruling was erroneous in allowing the jury to convict upon proof of merely using the tenement for the illegal purpose without proof of keeping and maintaining it.

INDICTMENT, on the Gen. Sts. *c.* 87, § 7, against a married woman, for keeping and maintaining at Northampton, between January 1 and May 1, 1869, a common nuisance, to wit, a tene-

ment in said Northampton, there used for the illegal keeping and illegal sale of intoxicating liquors.

At the trial in the superior court, before *Scudder*, J., some of the witnesses called by the Commonwealth testified, on cross-examination, without objection, that the tenement in question was in Williamsburgh and not in Northampton. To rebut this evidence, the Commonwealth called Joel Hayden, who testified that he lived near the dividing line between Northampton and Williamsburgh; that he was acquainted with the line, and had run it when measuring his own land; and that the tenement was on the Northampton side of the line. The defendant objected to the admission of Hayden's testimony, and contended " that the town line at this point, as evidenced by an authenticated perambulation, was the only legitimate evidence on that point; " but the judge overruled the objection.

" The defendant offered herself as a witness, and, as evidence tending to show that the defendant's tenement was in Williamsburgh, was asked if she had paid money to the collector of Williamsburgh for taxes assessed there on her husband's property, including this tenement, and offered to show that said tax was assessed against her husband in Williamsburgh; but the judge excluded the evidence."

" The defendant put in evidence the record of a conviction, before a trial justice, of her husband, Thomas Heffron, for keeping and maintaining the same tenement for the illegal keeping and sale of intoxicating liquors, between January 1 and April 21, 1869 ; and there was no evidence offered by the Commonwealth that any liquor was sold or kept for sale after April 21. The judge, however, ruled that this evidence did not conclude the Commonwealth from showing that the defendant was keeping the nuisance within the same period; and also ruled that it was a material question whether the tenement in question was in Northampton or Williamsburgh, and if the jury found it to be in Williamsburgh the indictment could not be sustained; but if they found it to be in Northampton, and that the defendant used the premises in question for the illegal keeping and sale of intoxicating liquors within the period mentioned in the indictment,

and not coerced by her husband, they might find her guilty." The jury found the defendant guilty, and she alleged exceptions.

*C. Delano*, for the defendant. 1. The testimony of Hayden was not admissible; the authenticated perambulation was the best evidence. Gen. Sts. *c.* 18, § 3. St. 1861, *c.* 84. *Abington* v. *North Bridgewater*, 23 Pick. 170. *Bridgewater Trustees* v. *Bootle cum Linacre*, Law Rep. 2 Q. B. 4. 1 Greenl. Ev. §§ 145, 146.

2. The defendant should have been allowed to show that a tax was assessed against her husband in Williamsburgh on his property including the tenement in question. *West Boylston* v. *Sterling*, 17 Pick. 126. *Ward* v. *Oxford*, 8 Pick. 476. *Abington* v. *North Bridgewater*, 23 Pick. 170.

3. The conviction of the husband for keeping the same tenement as a nuisance during the same time, was admissible and conclusive in favor of the wife. *Robbins* v. *Sawyer*, 3 Gray, 375.

4. The judge erred in instructing the jury that if the defendant used the premises for the illegal keeping and sale of intoxicating liquors, &c., they might find her guilty; there must be both a keeping of the tenement and a use for the illegal purpose. *Commonwealth* v. *Carolin*, 2 Allen, 169. *Commonwealth* v. *Hill*, 4 Allen, 589. *Commonwealth* v. *Welsh*, 1 Allen, 1. *Commonwealth* v. *Kimball*, 7 Gray, 328.

*C. Allen*, Attorney General, for the Commonwealth.

GRAY, J. 1. An offence having no essential connection with the place in which it is committed, like a common assault or a simple larceny, though charged to have been committed in a particular town, may be proved to have been committed anywhere within the county. *Commonwealth* v. *Tolliver*, 8 Gray, 386. *Commonwealth* v. *Lavery*, 101 Mass. 207. But in an indictment for an offence in its nature local, as in the cases of larceny in a building, burglary, arson, desecrating and disfiguring a burying ground, striking in a church yard, or nuisance in a highway, the allegation of place is a necessary part of the description of the offence, and must be proved as laid. *Commonwealth* v. *Wellington*, 7 Allen, 302, and authorities cited. *People* v. *Slater*, 5 Hill 401. 2 Gabbett Crim. Law, 213. It was therefore rightly ruled

at the trial that the question whether the tenement which the defendant was charged with keeping and maintaining as a nuisance was in Northampton, as alleged, or in Williamsburgh, was material.

But the position of the defendant, that the line between the two towns could only be proved by a record of perambulations by the selectmen, cannot be sustained. Selectmen have no authority to change the boundaries or to adjudicate upon the limits of towns, but only to ascertain existing lines and renew old marks and monuments. Their perambulations are competent and strong evidence of the location of the lines, but they are not conclusive. Gen. Sts. c. 18, § 3. *Freeman* v. *Kenney*, 15 Pick. 44. *Putnam* v. *Bond*, 100 Mass. 62. If their record of perambulations were produced, and not sought to be impeached for mistake or controlled by other evidence, oral testimony would be competent, as in the case of applying a deed or other written instrument, to show the actual position of the line upon the land. Hayden, who was acquainted with the dividing line between Northampton and Williamsburgh, having lived near it, and run it when measuring his own land, was therefore rightly permitted to testify on which side of the line the tenement in question was situated.

2. The testimony of the defendant that she had paid money to the collector of Williamsburgh for taxes assessed in that town on this tenement as her husband's property was, taken by itself, incompetent; and its admissibility was only sought to be justified in connection with her further offer " to show that said tax was assessed against her husband in Williamsburgh," which must fairly be taken to mean by the best evidence of that fact, namely, the records of the assessors.

The book of assessments of taxes, made and kept by the assessors in the performance of their official duty, in accordance with the requirements of the Gen. Sts. c. 11, §§ 33, 34, is doubtless competent evidence of the facts therein stated in all cases relating to the assessment or collection of the tax. *The King* v. *King*, 2 T. R. 234. *Ronkendorff* v. *Taylor*, 4 Pet. 349. How far it is admissible for any other purpose, and in controversies

between persons not claiming rights under it, is a question upon which the authorities are somewhat obscure. But upon a careful examination we do not find any adjudication in favor of its admissibility against third persons, by itself, and when recently made, and not expressly declared to be evidence by statute.

The taxations and surveys which were admitted in evidence of the value of lands in *Bullen* v. *Michel*, 2 Price, 399; *S. C.* 4 Dow, 297; were very ancient documents, and were held competent on that ground. In *Doe* v. *Cartwright*, Ry. & Mood. 62; *S. C.* 1 C. & P. 218; Lord Chief Justice Abbott admitted the land tax collector's book, containing an entry by him, stating the assessment of a tax on a certain house to a certain person and his payment thereof, to show that he then occupied the house, upon the sole ground that the entry of payment was an entry against the interest of the collector. In *Doe* v. *Seaton*, 2 Ad. & El. 171; *S. C.* 4 Nev. & Man. 81; assessments more than sixty years old to a certain name were admitted for a like purpose, only in connection with the steward's book showing allowances to the tenant for corresponding charges, and other evidence, and between parties both claiming through the person to whom the book belonged at that time.

In *Doe* v. *Arkwright*, 5 C. & P. 575; *S. C.* 2 Ad. & El. 182 note; 1 Nev. & Man. 731; Mr. Justice Parke (afterwards Baron Parke and Lord Wensleydale) expressed the opinion at *nisi prius*, that a land tax assessment was not evidence of seisin in the person assessed; and at the argument in banc said : " The only ground of its admissibility seems to be the duty incumbent on the assessors to ascertain the occupier and charge him." " I thought them no evidence of the title. At any rate they would only show the opinion of the parish officers." And Lord Denman said : " It would be indifferent to them from whom they got the amount of tax, so that it was raised." The court of queen's bench, without passing upon the general question, held that the books offered in that case were no evidence of seisin, because it was shown to have been a common practice to retain the name of a deceased proprietor on them until the estate was sold to a different family.

In *Welland* v. *Middleton*, 11 Irish Eq. 603, Lord Chancellor Sugden, upon the question whether a letting of certain lands was within a leasing power by which the donee was restricted to leasing at the full value, admitted the valuation of the Irish poor law commissioners as some evidence of the annual value of the lands as therein stated. But the learned chancellor prefaced his opinion by saying, " This is a mere matter of curiosity ; for the evidence of several witnesses has been read, who swear to what the valuation is under the poor law, so that the admission of this document is not material.". And the statute, under which that assessment was made and recorded, not only required the entry in a book of a declaration signed by the commissioners, stating that and other particulars, but expressly provided. that " the said book shall after the signature of the said declaration be evidence of the truth of every .particular so entered therein." St. 1 & 2 Vict. *c.* 56, §§ 64, 65. Lord Chancellor Brady afterwards admitted such books, in a case between third persons, solely upon the authority of his predecessor's decision. *Swift* v. *M' Tiernan*, 11 Irish Eq. 602.

In *Boston* v. *Weymouth*, 4 Cush. 538, upon the question of the settlement of a pauper, and to show that he paid no taxes in a town in a certain year, an entry upon the books of the selectmen in favor of the collector for the discount of such taxes was held to be admissible after the lapse of more than forty years and the death of all the town officers, because adverse to the interest of the town, and an ancient transaction. In *Edson* v. *Munsell*, 10 Allen, 557, the books of the assessors, showing an assessment of real estate to a guardian, were admitted in connection with 'a bond for the faithful performance of his trust, purporting to have been executed more than fifty years ago by the guardian, and produced by the register of probate, and with the register's testimony that there was no other record or evidence of the appointment in the probate office, to show that the ward was under guardianship at the time of the assessment.

On the other hand, it was held by this court in *Mead* v. *Boxborough*, 11 Cush. 362, that the assessment of a man's poll and personal property in one town was no evidence of his domicil

as against another town; and in *Flint* v. *Flint,* 6 Allen, 34, and *Kenerson* v. *Henry,* 101 Mass. 152, that the valuation and assessment of real estate under the tax act was no evidence of its value as between third persons. Those cases are decisive of the present. The assessment can be no better evidence of the situation of land, than it is of the value of land or the domicil of the person. The domicil of persons, the situation and value of property, and other facts, are required by the tax acts to be ascertained and recorded by the assessors, according to their best information and opinion, for the sole purpose of the assessment and collection of the tax; and there would be great danger of injustice if their estimates of any of these details or incidents were held to be competent evidence against third persons of any fact of which better evidence is obtainable. The assessment offered in evidence by the defendant was therefore rightly excluded.

3. The conviction of the husband for keeping and maintaining this tenement as a nuisance in violation of the Gen. Sts. *c.* 87, §§ 6, 7, during a certain period, if admissible at all in this case, was not inconsistent with the prosecution and conviction of the wife, either jointly with him, or severally, for a like offence, upon proof that she, during part of the same time and in the same tenement, and without his coercion, did the acts necessary to constitute guilt on her part. *Commonwealth* v. *Tryon,* 99 Mass. 442.

4. The final ruling of the judge appears to have been made and reported solely in reference to the points taken by the defendant at the trial and already considered. The objection now raised that this ruling was imperfect in allowing the jury to convict the defendant upon proof that she merely used the tenement for the illegal sale and keeping of intoxicating liquors, without proof that she kept and maintained it within the meaning of the statute, cannot be considered as presented by the bill of exceptions. *Exceptions overruled.*