COMMONWEALTH vs. DONALD F. GEISLER.

Berkshire. May 17, 1982. — August 2, 1982.

Present: ARMSTRONG, GREANEY, & SMITH, JJ.

*Motor Vehicle,* Operation, Homicide. *Practice, Criminal,* Variance, Instructions to jury. *Evidence,* Collateral matter, Admissions and confessions, Relevancy and materiality.

At the trial of a defendant charged with homicide by motor vehicle and leaving the scene of an accident without making himself known evidence warranted a finding that the defendant was the operator of the automobile involved in the accident. [272-275]

A criminal complaint alleging that the defendant in a certain town operated a motor vehicle on a public way recklessly or negligently so as to endanger human life or safety, thereby causing the death of a person, did not bar the Commonwealth from introducing evidence of negligent operation in a neighboring town. [275-276]

Although at the trial of a complaint charging homicide by motor vehicle there was no direct evidence of negligence at the scene of the accident, the evidence permitted a finding that the defendant drove negligently both in the town where the accident occurred and a neighboring town and thus the defendant's motion for a required finding of not guilty was properly denied. [276-278]

At the trial of a complaint charging homicide by motor vehicle, the judge did not abuse his discretion in excluding evidence offered by the defendant to show that the victim had failed to use due care by not using a crosswalk to cross a public way and in refusing to instruct the jury on the matter as requested by the defendant. [278-280]

At the trial of a complaint charging homicide by motor vehicle, the judge did not err in admitting in evidence statements made by the defendant to a police officer by which the defendant placed himself near the scene of the accident, in the car that struck the victim, at a time not long before the accident and which tended to show that the defendant had exclusive control of the automobile on the night of the accident; the judge also did not err in referring to the statements as alleged admissions and leaving it to the jury to decide whether, in fact, they constituted admissions and whether they were voluntarily made. [280]

COMPLAINTS received and sworn to in the Northern Berkshire Division of the District Court Department on September 29, 1979.

Upon appeal to the Central Berkshire Division, the case was tried before *Donelan, J.*

*John D. Lanoue* for the defendant.

*Gregory E. Gallagher,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. After trial in a District Court, a six-person jury found the defendant guilty of homicide by motor vehicle, G. L. c. 90, § 24G, and leaving the scene of an accident without making himself known, G. L. c. 90, § 24(2)(a). On appeal, he contends (1) that his motions for required findings of not guilty were improperly denied; (2) that various evidentiary errors were made; (3) that certain requests for jury instructions were improperly refused; and (4) that the prosecutor's final argument contained prejudicial remarks. We reject these contentions and affirm the convictions.

Since the defendant challenges the sufficiency of the evidence supporting his convictions, we review the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Reid*, 384 Mass. 247, 257 (1981), and cases cited. One Samuel Miller testified that on September 29, 1979, about 2:30 A.M., he was driving north on Route 8 through the town of Cheshire toward the town of Adams. It was raining at the time. While still in Cheshire, Miller observed another car ahead of him, also traveling north, and saw the flashing lights of a parked police cruiser in the distance. Both cars thereafter crossed the town line into Adams and passed the cruiser.

As Miller approached the car ahead, he observed that it was "swerving" slowly "[f]rom the edge of the breakdown lane, back over the center line" of the road. He decided to pass the car but as he pulled closer, he noticed the "upper torso" of a human body "extending from the right [front] side of the car." The body was apparently impaled on the car in a position "with the . . . right arm extended over the head." Miller remained behind the car briefly to be certain that

this was, in fact, a body he was seeing. He then pulled over and stopped at the side of the road.

After about a minute, Miller resumed driving in an effort to catch up with the car carrying the body. In a few moments, he saw it ahead of another vehicle which had intervened, and observed that it was "still [traveling] with a bit of swerving." The intervening car continued north on Route 8, and the car carrying the body made a right turn onto Liberty Street in Adams. There, Miller saw the body fall off the car and onto the road. The car then ran over the body and drove away.[1]

Miller stopped his car and approached the body lying in the road. He noticed that "the body sort of moved, sort of made a wheezing sound." The victim died shortly thereafter. There was medical evidence that his death was caused by multiple traumatic injuries of the kind that would be sustained by someone who had been struck by a moving vehicle and dragged along for some distance.

An Adams police officer testified that about 3:10 A.M. that night he was assisting the operator of a disabled vehicle on Route 8 in Adams. He had parked his cruiser in the northbound lane, about two hundred feet north of the Cheshire town line, and had left its lights flashing. The officer saw a car pass the cruiser going north and noticed that the car "was dragging something," although he could not see what it was. About five minutes later, the officer was called to Liberty Street in Adams, where he observed the body of the victim. He then drove south on Route 8, looking for evidence connecting the victim's death with the car he had seen shortly before.

---

[1] Two other witnesses observed this car on that night. Lynn Pilot, a passenger in Miller's car, testified that she also saw a car traveling on Route 8 with a human body protruding from its right front side, and that she also saw the body fall off the car when it turned onto Liberty Street. Another witness, George Angeli, testified that about 3:00 A.M. he was walking toward his car, which was parked on Route 8 in Adams, when he saw a car travelling north at about five or ten miles per hour. He testified that this car was missing a portion of its front grille on the right side, and that it was making a "loud thumping noise." Angeli lost sight of the car, however, as it turned onto Liberty Street.

While still in Adams, about one mile from Liberty Street, the officer found a piece of red cloth which matched the shirt worn by the victim. In front of a bar in Cheshire, 4.8 miles from Liberty Street, the officer found pieces of plastic resembling broken parts of an automobile grille scattered in the northbound lane over an area of seventy-five to one hundred feet.[2]

About 6:45 A.M. police officers cruising the streets of Adams observed a car which was missing a portion of its grille on the right side, and which also had a dent on the right front side of the hood. The car was parked on Cherry Street near the home of the defendant. It was a light green 1977 Plymouth Volare with a vinyl roof, and was registered to the defendant's wife. The car was subsequently identified by witnesses Miller and Angeli as the car which they had seen on the night of the incident. An expert witness was able to reconstruct 90 to 95% of the missing portion of this car's grille from the broken pieces of plastic found on Route 8 in Cheshire. In addition, analysis of fibers taken from the right front fender and tire of this car showed them to be consistent with fibers of the clothing worn by the victim.[3]

---

[2] The owner of the bar testified that the victim had been drinking there for about an hour that night, and had left about midnight. There was also evidence that the portion of Route 8 facing the bar is a paved highway with two lanes, divided by solid double lines. This portion of the road is straight, and is well lighted at night. It has breakdown lanes and sidewalks on each side, and two crosswalks nearby. The surrounding area is developed and includes several residences and small stores. On the night of the accident, the road was wet but free from defects. The distance along Route 8 from the bar to the Adams town line is one to two miles.

[3] Witnesses Miller and Pilot originally told police that the car they saw was "reddish-brown" in color. Miller further described the car as a Dodge or Chevrolet with an ordinary metal roof and a damaged left rear bumper. Both of these witnesses also told police, however, that they were not sure of these descriptions. In addition, witness Angeli originally told police that the car he saw was green, and was a "Chrysler product." Further, the officer testified that the car he saw on Route 8 was light in color, and had a vinyl roof. The defendant seems to argue that these identifications were so unreliable that they should have been rejected as a matter of law. It is fundamental, however, that "once a conflict in the evidence is raised, it is 'for the jury to sort out and is not material to the directed ver-

About 7:00 A.M. that same morning, a State trooper interviewed the defendant at his home. After receiving Miranda warnings, the defendant gave the trooper the following account of his whereabouts on the previous night. The defendant said that he left home alone about 9:00 P.M.; that he drove his wife's car to a bar in Pittsfield, where he had one drink; that he left the bar about 10:15 P.M. and drove north on Route 8 through Adams[4] to North Adams; that he returned to Adams about 11:00 P.M. and parked the car on Cherry Street; that he then walked around town for several hours; and that he returned home about 2:00 A.M., and went to bed. The defendant also said that the car was not damaged when he parked it the night before, and that he had "no idea" how it had been damaged. The trooper testified that he recalled the defendant's saying further that the car was "right where he parked it" the night before, that "no one [else] drove the car" that night, and that "he was the only one that had keys" to the car.[5]

1. The defendant argues first that the evidence was insufficient to warrant a finding that he was the person who operated the car, and, as a consequence, that the judge erred in denying his motions for required findings of not guilty. Mass.R.Crim.P. 25, 378 Mass. 896 (1979). Although there was ample evidence to warrant the conclusion that the damaged car found near the defendant's home was the car that struck the victim, there was no direct evidence that the

dict issue.'" *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 19 (1980), quoting from *Commonwealth* v. *Walter*, 10 Mass. App. Ct. 255, 261 (1980). Thus, in the presence of these conflicting descriptions, it was for the jury to determine whether Miller's subsequent identification of the light green Volare was reliable, and whether, in view of all the evidence, the Volare was the car that struck the victim.

[4] By this route, the defendant would have had to drive through Cheshire, which is located north of Pittsfield and south of Adams.

[5] Later that morning, the defendant gave Adams police a written statement which included basically the same information as he had given the trooper. In the written statement, however, the defendant added the fact that after he parked the car, he "locked the vehicle and put the keys in . . . [his] pants pocket."

defendant was the person driving the car. In several cases of this sort, circumstantial evidence has been held insufficient to permit a finding of guilt to a moral certainty, and to the exclusion of any other reasonable hypothesis. See *Commonwealth* v. *Shea,* 324 Mass. 710, 713-714 (1949); *Commonwealth* v. *Mullen,* 3 Mass. App. Ct. 25, 26-27 (1975). In a number of other cases, however, circumstantial evidence has been held sufficient to establish beyond a reasonable doubt that the defendant was the driver of the vehicle in question. See *Commonwealth* v. *Henry,* 338 Mass. 786 (1958); *Commonwealth* v. *Swartz,* 343 Mass. 709, 711-713 (1962); *Commonwealth* v. *Rand,* 363 Mass. 554, 561-562 (1973); *Commonwealth* v. *Smith,* 368 Mass. 126, 128-129 (1975); *Commonwealth* v. *Doyle,* 12 Mass. App. Ct. 786, 787-789 (1981).

We believe that the evidence presented here was sufficient to permit a finding that the defendant was driving the car that struck the victim. The defendant's own statements to police show that after consuming some alcohol, the defendant drove the car on Route 8 through Cheshire and Adams; that the car was under his exclusive control until at least 11:00 P.M.; that, as far as he knew, no one else had driven it that night, see *Commonwealth* v. *Henry, supra*; that he left the car locked when he parked it; and that he had the only keys to the car.[6] See *Commonwealth* v. *Rand,*

---

[6] The defendant argues that the judge erred in denying his motion to strike the State trooper's testimony, on direct and redirect examination, that he recalled the defendant as saying that "he was the only one that had keys" to the car. He contends that the trooper repudiated this testimony in the course of cross- and recross-examination. He further argues that, if this testimony had been struck, the evidence would have been insufficient to permit a finding that the defendant was the driver of the car. Defense counsel's questioning of the trooper on this issue was somewhat confusing, and left his testimony subject to differing interpretations, including the interpretation that he had no specific memory of any statement made by the defendant regarding the keys to the car. Upon review of the trooper's entire testimony, however, it is our view that he was never clearly "asked to make a definite choice between his contradictory statements." *Donovan* v. *Johnson,* 301 Mass. 12, 13 (1938). Contrast *Krasnow* v. *Fenway Realty Co.,* 352 Mass. 781 (1967). For that reason, the defendant was not

*supra* at 562. The car was found parked within a block of the defendant's home only a few hours after the accident, see *Commonwealth* v. *Smith, supra* at 128-129, and there was no evidence that its doors or ignition had been tampered with. The jury could have disbelieved the defendant's statement that, at the time of the accident, he was either walking around Adams alone or at home. The jury could also have viewed as false his implicit claim that some unknown person had taken the car without authority, struck the victim, and returned it to precisely the same place where he had parked it earlier. Moreover, had the jury found, from all the evidence discussed above, that the defendant fabricated the statement regarding his whereabouts in order to mislead the police, they could have considered that statement as evidence manifesting consciousness of guilt.[7] See *Commonwealth* v. *Swartz, supra* at 712-713; *Commonwealth* v. *Smith, supra* at 129; *Commonwealth* v. *Doyle, supra* at 789. "While proof of mere consciousness of guilt alone may be insufficient to convict of crime, see *Commonwealth* v. *Montecalvo,* [367 Mass. 46, 52 (1975)], evidence of such a state of mind when coupled with other probable inferences, may be sufficient to amass the quantum of proof necessary to prove guilt. See *Commonwealth* v. *Best,* 381 Mass. 472, 483 (1980)." *Commonwealth* v. *Porter,* 384 Mass. 647, 653 (1981). See *Commonwealth* v. *Booker,* 386 Mass. 466, 469-470 (1982). Applying the rele-

entitled to have the challenged statement struck under the special rule stated in *Sullivan* v. *Boston Elev. Ry.,* 224 Mass. 405, 406-407 (1916). Rather, the motion was properly denied under the general rule that it is for the jury to assess the credibility and weight to be accorded such conflicting testimony. See *Fitzgerald* v. *McClymont,* 314 Mass. 497, 499 (1943), and cases cited; *Uloth* v. *City Tank Corp.,* 376 Mass. 874, 882 (1978); Liacos, Massachusetts Evidence § 8(A)(3), at 143-144 (5th ed. 1981).

[7] Accordingly, we reject the defendant's collateral contention that it was improper for the prosecutor to argue, in closing, that this statement should be disbelieved and treated as evidence of guilt. In the present circumstances, these comments constituted "fair inferences from the evidence." *Commonwealth* v. *Earltop,* 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring).

vant standards, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979), we conclude that the evidence was sufficient to permit a finding beyond a reasonable doubt that the defendant was the driver of the car that hit the victim.[8]

2. The defendant argues next that the judge erred in denying his motion for a required finding of not guilty on the vehicular homicide charge because the language of that complaint limited the Commonwealth to proving that he drove negligently at the place in Cheshire where the victim was struck,[9] and because the evidence did not permit the inference that he drove negligently there or anywhere else in Cheshire. Carrying the argument one step further, the defendant contends that it was error to admit evidence of negligent operation in Adams to prove the charge as framed.

"In general, a crime must be proved as charged and must be charged as proved. But a defendant is not to be acquitted on the ground of variance between the allegations and proof if the essential elements of the crime are correctly stated, unless he is thereby prejudiced in his defense. G. L. c. 277, § 35. See *Commonwealth* v. *Clark*, 5 Mass. App. Ct. 673, 677-678 (1977)." *Commonwealth* v. *Grasso*, 375 Mass. 138, 139 (1978).

---

[8] The defendant's final contention on this issue is that the judge erred in declining to give a supplementary instruction which he requested. That instruction would have specified that the jury could not infer that the defendant was the driver of the car from the fact that it was registered to his wife. Although such an instruction would have been proper, cf. *Commonwealth* v. *Shea*, *supra* at 712, we are aware of no authority which required that it be given. Since the judge's previous instructions on inferences and burden of proof were adequate, we cannot say that his failure to give the requested instruction constituted reversible error.

[9] The complaint alleged, in pertinent part, that on September 29, 1979, the defendant, "at Cheshire in . . . [Berkshire] County did operate a motor vehicle in and upon the public ways of the Commonwealth, to wit: Route 8 — South Street, recklessly or negligently so that the lives and safety of the public might be endangered, and by such operation did collide with . . . [the victim], causing the death of said . . . [victim], in violation of [c. 90, § 24G,] of the General Laws."

We have said that the "elements necessary to find criminal culpability under § 24G . . . [are]: (1) operation of a motor vehicle, (2) upon a public way, (3) recklessly or negligently so as to endanger human life or safety, (4) thereby causing the death of a person." *Commonwealth* v. *Burke,* 6 Mass. App. Ct. 697, 699 (1978). We have also said that "the standard of 'negligence' " used in § 24G is the traditional one which "has been fully explicated in numerous Massachusetts decisions (see e.g., *Altman* v. *Aronson,* 231 Mass. 588, 591 [1919]; *Galliher* v. *Stewart,* 310 Mass. 77, 80 [1941]; *Beaver* v. *Costin,* 352 Mass. 624, 626 [1967]; *Goldstein* v. *Gontarz,* 364 Mass. 800, 805 [1974]; *Scott* v. *Thompson,* 5 Mass. App. Ct. 372, 374-375 [1977]), and has been defined in many treatises (e.g., 2 Harper & James, Torts §§ 16.2, 16.9 [1956]; Prosser, Torts §§ 30-32 [4th ed. 1971]; Restatement [Second] of Torts §§ 282, 283 [1965])." *Commonwealth* v. *Burke, supra* at 699-700. See *Commonwealth* v. *Jones,* 382 Mass. 387, 389 (1981).

Here, the complaint correctly stated the four essential elements of the crime of vehicular homicide. It may be true that the words "collide with," as charged in the complaint, suggest a theory of negligent operation at the point of impact in Cheshire. However, G. L. c. 277, § 20, provides that the "place of the commission of the crime need not be alleged unless it is an essential element thereof." Although it is essential that a vehicular homicide occur "upon a way or in a place to which members of the public have access," *Commonwealth* v. *Jones, supra* at 393, that element was alleged in the complaint and the defendant stipulated to its presence in the pretrial conference report. Beyond that requirement, the offense appears to have "no essential connection with the place in which it is committed." *Commonwealth* v. *Parrotta,* 316 Mass. 307, 309 (1944), quoting from *Commonwealth* v. *Heffron,* 102 Mass. 148, 150 (1869). For that reason, the allegation of the particular place on Route 8 where the offense occurred was unnecessary.[10] See *Com-*

---

[10] The court's territorial jurisdiction over this offense was sufficiently alleged by the "name of the county and court in the caption" of the com-

*monwealth* v. *Tolliver,* 8 Gray 386 (1857) (assault); *Commonwealth* v. *Howard,* 205 Mass. 128, 144 (1910) (murder); *Commonwealth* v. *Parrotta, supra* at 308-312 (receiving stolen property); 3 Torcia, Wharton's Criminal Procedure § 512, at 411 (12th ed. 1975). Contrast *Commonwealth* v. *Heffron, supra* at 150-151 (maintaining tenement as nuisance); *Commonwealth* v. *Clancy,* 261 Mass. 345, 347-348 (1927) (using motor vehicle without authority, where complaint lacked not only allegation of place but also of use on public way). General Laws c. 277, § 35, closes the circle created by the case law by providing that a defendant "shall not be acquitted by reason of . . . [the Commonwealth's] failure to prove unnecessary allegations in the description of the crime." See *Commonwealth* v. *Kalinowski,* 360 Mass. 682, 683-684 (1971); *Commonwealth* v. *A Juvenile,* 365 Mass. 421, 439-440 (1974).[11]

While there was no direct proof of negligence at the point of impact, the evidence permitted a finding that the defend-

---

plaint. G. L. c. 277, § 20. We note further that the Northern Berkshire Division of the District Court Department, which issued the complaint and tried the case, did have jurisdiction over offenses committed in Adams as well as Cheshire. G. L. c. 218, § 1, as amended through St. 1979, c. 343.

[11] The defendant's argument that he was prejudiced by the misleading language of the complaint is unconvincing. Pretrial discovery appears to have been ample, and should have put the defendant on notice that the Commonwealth's theory of the offense included negligent operation of the car both in Cheshire and Adams. The defendant has never claimed merely that he was not negligent at the point of impact, or elsewhere in Cheshire. Rather, he has consistently defended on the ground that he was not driving the car at all at the time when the victim was struck. It appears, then, that the defendant was not prejudiced by any ambiguity as to the precise location at which the offense was alleged to have occurred. See *Commonwealth* v. *Jones,* 12 Mass. App. Ct. 489, 491-492 (1981). Nor does it appear that the defendant sought clarification by way of a motion for a bill of particulars (Mass.R.Crim.P. 13(b), 378 Mass. 872 [1979]; see G. L. c. 277, § 34), or by means of the pretrial conference agreement in this case, Mass.R.Crim.P. 11(a), 378 Mass. 862 (1979). Although further discovery "could not be given the effect of adding a fresh charge to the [complaint] . . . it could serve to clarify what was instinct in it." *Commonwealth* v. *Whitehead,* 379 Mass. 640, 648 (1980), and cases cited. If prejudice indeed mattered at all, it was not shown here.

ant drove negligently both in Cheshire and in Adams. The judge instructed in general terms on the concepts of negligent and reckless operation, and left their application to the jury in light of all the evidence presented during this eight-day trial. We conclude that the judge properly denied the motion for a required finding on the vehicular homicide charge in the context now addressed, and properly admitted evidence that the defendant drove negligently both in Cheshire and Adams.[12]

3. The judge first excluded, and then admitted, some evidence regarding the existence of a crosswalk near the point on Route 8 in Cheshire where the victim was struck. Ultimately, following a voir dire on the matter, the judge (1) declined to take further evidence regarding the crosswalks; (2) declined to admit in evidence certain regulations of the Department of Public Works dealing with the use of crosswalks by pedestrians, 720 Code Mass. Regs. 9.01 (5), (17), (20) & (34), and 9.09 (1), (4) & (5); (3) refused to give three instructions requested by the defendant concerning the victim's failure to exercise due care (by his assumed failure to cross Route 8 in a crosswalk); and (4) instructed the jury to disregard the initial evidence admitted regarding the crosswalks. The defendant argues that these rulings were error. We disagree.

The defendant concedes that any "negligence of the deceased was not an excuse to the defendant," and "would not

---

[12] For that reason, it was also proper for the prosecutor to argue the inferences raised by this evidence. See note 7, *supra*. The defendant argues that one portion of the prosecutor's argument exceeded the evidence by suggesting that one or more witnesses actually saw the collision at the point of impact. To the extent that this passage can be so construed, we note that the judge immediately ruled, apparently within the hearing of the jury, that it was for the jury to decide whether the evidence warranted that inference. See *Commonwealth* v. *Liebman*, 379 Mass. 671, 678 (1980). In addition, the judge ultimately charged the jury that it was their recollection of the evidence which controlled (see *id.* at 676-679), and that the arguments of counsel are not evidence. See *Commonwealth* v. *Downey*, 12 Mass. App. Ct. 754, 760-761 (1981). Since defense counsel did not pursue the matter further on either occasion, we need not do so here.

relieve . . . [him]" of culpability in a criminal prosecution for vehicular homicide. *Commonwealth* v. *Guillemette,* 243 Mass. 346, 347 (1923). Taking a slightly different tack, he maintains instead that the jury should have learned that it would have been reasonable, in all the circumstances, for the defendant to rely on the pedestrian's "reciprocal" duty of care, as discussed in *Stinson* v. *Soble,* 301 Mass. 483, 485 (1938). This argument misses the mark since it continues to focus on the conduct of the victim. Although the victim's conduct would be a relevant factor in a civil action, the crucial issue in this criminal case was whether the conduct of the defendant was negligent.

We recognize "[o]f course, [that] all the facts connected with the incident were pertinent . . . [and that t]he actual conduct of both parties at the time might be shown." *Commonwealth* v. *Guillemette, supra* at 347. On this basis, the judge could properly have admitted the evidence offered by the defendant, which tended to show that the victim was not within a crosswalk at the time he was struck by the car.[13] This evidence, however, was only of collateral significance with respect to the culpability of the defendant's conduct, and "the extent to which collateral matters shall be explored is in the discretion of the judge." *Commonwealth* v. *Doherty,* 353 Mass. 197, 213-214 (1967). The judge "may exclude evidence if the danger of confusion, unfair prejudice, or undue consumption of time in trial of collateral issues outweighs the probative value of the evidence offered." *Commonwealth* v. *Sherry,* 386 Mass. 682, 693 (1982). See *Commonwealth* v. *Clifford,* 374 Mass. 293, 300 (1978). See also *Commonwealth* v. *Blaikie,* 375 Mass. 601, 610-611 (1978). For these reasons, and because the admission of this evidence as support for the defendant's complex reciprocal duties theory might have shifted the jury's focus to the propriety of the victim's conduct, thereby diverting their atten-

---

[13] At the voir dire, the defendant presented evidence that the center of the area in which the broken pieces of grille were found was about 150 feet north of one crosswalk and about 250 to 300 feet south of another crosswalk.

tion from the central question, we cannot say that the judge abused his discretion in making the challenged rulings.

4. The oral and written statements which the defendant gave the police on the morning following the accident were properly admitted in evidence. By these statements, the defendant placed himself near the scene of the accident, in the car that struck the victim, at a time not long before it occurred. Cf. *Commonwealth* v. *Grieco*, 323 Mass. 639, 641-642 (1949). The statements also tended to show that the defendant had exclusive control of the car on the night of the accident. See *Commonwealth* v. *Henry*, 338 Mass. 786 (1958). As such, the statements could have been viewed by the jury as admissions within the definition set out in *Commonwealth* v. *Bonomi*, 335 Mass. 327, 347 (1957). See *Commonwealth* v. *Walden*, 380 Mass. 724, 731 (1980).

There also was no error in the judge's instructions with respect to these statements. The judge referred to them as "alleged admission[s]," and left it to the jury to decide whether, in fact, they constituted admissions, see *Commonwealth* v. *Lucas*, 332 Mass. 594, 598 (1955), and whether they were voluntarily made. See *Commonwealth* v. *Tavares*, 385 Mass. 140, 149-152 (1982). Nor did the judge err in declining to give a supplementary instruction requested by the defendant. It is elementary, and the main charge made it abundantly clear, that if the statements were found not to constitute admissions, they were not to be considered as evidence of the defendant's guilt. Since the judge could properly have considered the requested instruction to be redundant, he did not abuse his discretion in declining to give it. See *Commonwealth* v. *MacDonald*, 371 Mass. 600, 603 (1976). Cf. *Commonwealth* v. *Lee*, 324 Mass. 714, 722 (1949).

5. We have addressed the defendant's major contentions on the appeal; those remaining raise nothing which merits further discussion. There is no basis for concluding that the judge's rulings, taken in the aggregate, denied the defendant a fair trial.

*Judgments affirmed.*