COMMONWEALTH vs. RAYSEAN L. PLATT.

No. 01-P-299.

Plymouth. October 7, 2002. - January 31, 2003.

Present: LENK, BERRY, & McHUGH, JJ.

Further appellate review granted, 439 Mass. 1101 (2003).

*Motor Vehicle,* Operation, Leaving scene of accident, Theft.

At the trial of a criminal complaint charging the defendant with leaving the scene of an accident involving property damage and with making a false report of a motor vehicle theft, the judge erred in denying the defendant's timely motion for a required finding of not guilty, where the entire evidence, viewed in the Commonwealth's favor, was too slight to permit a jury to conclude, beyond a reasonable doubt, that the defendant and no other person was driving the car when it collided with the property of another person. [266-271]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on July 3, 2000.

The case was tried before *Richard D. Savignano,* J.

*William W. Adams* for the defendant.

*Karen H. O'Sullivan,* Assistant District Attorney, for the Commonwealth.

LENK, J. After trial by jury, the defendant was convicted of leaving the scene of an accident involving property damage,[1] and of making a false report of a motor vehicle theft.[2] He appeals his convictions, asserting that (1) the trial judge erred in denying his motion for a required finding of not guilty after the Commonwealth had rested; and (2) notwithstanding the defendant's failure to renew his motion for a required finding of not guilty, the convictions should be set aside because the Commonwealth's case had deteriorated between the time it rested and the conclusion of all the evidence. As we reverse on the first ground, we need not reach the second.

---

[1] G. L. c. 90, § 24(2)(*a*).

[2] G. L. c. 268, § 39.

*The evidence.* "Since the defendant challenges the sufficiency of the evidence supporting his convictions, we review the evidence in the light most favorable to the Commonwealth." *Commonwealth* v. *Geisler*, 14 Mass. App. Ct. 268, 269 (1982). The Commonwealth presented the following evidence. Late in the night of June 20, 2000, or early in the morning of June 21, the defendant's automobile was involved in an accident outside the home of Pedro Pose, located approximately one-half to three-quarters of a mile from the defendant's residence in Brockton. The accident caused Pose's property considerable damage, as well as serious damage to the defendant's automobile. After he was awakened by neighbors around 12:15 A.M., Pose did not see anyone, save the police and neighbors, at the scene of the accident.

At approximately 6:00 A.M. on June 21, an officer of the Brockton police department, in response to a call about a report of a stolen automobile, went to the defendant's home. When the officer arrived, the defendant was waiting for him outside. The officer noticed a small cut under the defendant's cheekbone that looked "fairly recent," and an abrasion on the defendant's left elbow that appeared "fresh in nature"; neither was bleeding. The defendant told the officer that his automobile had been stolen. The defendant appeared nervous when speaking with the officer, and his voice was trembling and barely audible. When the officer asked the defendant about the circumstances of the alleged theft, the defendant walked into his house and came back out with his insurance policy.

The next day, the officer returned to the defendant's residence so that the defendant could fill out a stolen motor vehicle report. The defendant told the officer that his automobile had been stolen at about 12:15 A.M. on June 21 while he was at a store on Centre Street in Brockton, the name of which he could not remember. The defendant said that he briefly left the engine running and the doors unlocked and, when he returned to the spot where he had left his automobile, it was gone. When asked why he waited five and one-half hours to notify the police of the theft, the defendant gave no explanation. He signed the stolen motor vehicle report under the pains and penalties of perjury.

Six days later, on June 28, an investigator from the defendant's motor vehicle insurer interviewed the defendant at his house regarding the insurance claim he had made. The defendant told the investigator that, on the night his automobile was stolen, the defendant and his girlfriend had driven to a supermarket to pick up some items. They began to argue and, at a traffic light, his girlfriend got out of the automobile. The defendant then pulled over to the side of the street, turned the automobile off, and ran after her, leaving the keys in the ignition. When he later returned to the spot where he had left his automobile, it was gone. He and his girlfriend then walked home. When the investigator asked the defendant why he waited until 6:00 A.M. to notify the police, he answered that he was having trouble with his telephone.

*Motion for required finding.* The defendant argues that it was error for the trial judge to have denied his timely motion for a required finding of not guilty. The issue turns solely on whether, viewing this evidence[3] in the light most favorable to the Commonwealth, the jury could have found, beyond a reasonable doubt, that the defendant and no other was the operator of his automobile at the time of the accident. See *Commonwealth* v. *Mullen*, 3 Mass. App. Ct. 25, 26-27 (1975).[4]

There was no direct evidence that the defendant was the person driving the car at the time of the accident. As noted in *Commonwealth* v. *Geisler*, 14 Mass. App. Ct. at 273,

> "In several cases of this sort, circumstantial evidence has been held insufficient to permit a finding of guilt to a moral certainty, and to the exclusion of any other reasonable hypothesis. See *Commonwealth* v. *Shea*, 324 Mass. 710, 713-714 (1949); *Commonwealth* v. *Mullen*, 3 Mass. App. Ct. 25, 26-27 (1975). In a number of other cases, however, circumstantial evidence has been held sufficient to establish beyond a reasonable doubt that the defendant

---

[3]We do not discuss evidence offered on behalf of the defendant following the close of the Commonwealth's evidence.

[4]It is undisputed that the defendant's vehicle caused the accident. To the extent that the evidence does not support a jury finding that the defendant was the operator of his automobile at the time of the accident, it follows that the defendant's conviction for knowingly having made a false written statement alleging theft of his motor vehicle cannot stand.

was the driver of the vehicle in question. See *Commonwealth* v. *Henry*, 338 Mass. 786 (1958); *Commonwealth* v. *Swartz*, 343 Mass. 709, 711-713 (1962); *Commonwealth* v. *Rand*, 363 Mass. 554, 561-562 (1973); *Commonwealth* v. *Smith*, 368 Mass. 126, 128-129 (1975); *Commonwealth* v. *Doyle*, 12 Mass. App. Ct. 786, 787-789 (1981)."

The matter before us falls somewhere along the spectrum bounded, on the one side, by the *Shea-Mullen*[5] line of cases and, on the other, by the *Henry* to *Geisler*[6] line of cases, which we summarize in some detail in the margin.

[5] In *Commonwealth* v. *Shea*, 324 Mass. 710, 712-714 (1949), the Commonwealth had not introduced any evidence placing the defendant in the car on the date of the motor vehicle accident, and there was evidence that another person had been driving the car less than three hours before the accident in a different town.

In *Commonwealth* v. *Mullen*, 3 Mass. App. Ct. 25, 26 (1975), the evidence was likewise insufficient to establish that the defendant had been driving the car at the time of the 2:00 A.M. collision. The defendant was one of two occupants in the car and had been found shortly after the accident, well clear of the right rear side of the car, front passenger door agape, while the other occupant had died still stuck inside. See *ibid.* Because this alone suggested that the defendant had been in the passenger's and not the driver's seat, and because the Commonwealth had called no witnesses, including experts, to shed light on how any of the pair's injuries had occurred, the evidence was insufficient to support the conviction. See *id.* at 26-27. That the defendant owned the car, had driven it about six hours earlier in Quincy, and had made comments evidencing consciousness of guilt, were not enough "to resolve the uncertainty and permit a choice between, at the very most, equal inferences." *Id.* at 27.

[6] In *Commonwealth* v. *Henry*, 338 Mass. 786 (1958), the apparently somewhat intoxicated defendant told police, within an hour after his car had been involved in a hit-and-run collision, that only he had driven the car that afternoon.

In *Commonwealth* v. *Swartz*, 343 Mass. 709, 709-710 (1962), the hit-and-run collision took place at 10:00 P.M.; about a day later, police found the defendant's car parked near his house, damaged in respects consistent with the previous night's collision. The defendant acknowledged the car as his and explained that he had parked it in front of a tavern about 8:30 P.M. the preceding night and, at 10:30 P.M., discovered it was parked in damaged condition at the rear of the tavern. See *ibid.* He did not notify police because he had "beer on his breath." *Ibid.* The evidence sufficed because there was more than mere disbelief of the defendant's account of his whereabouts at the time of the accident: there was also his opportunity to operate the car at the time of the 10:00 P.M. hit-and-run collision, his almost exclusive knowledge that the car had been moved and damaged and, in the face of such knowledge, his having

The Commonwealth's evidence in the matter before us is

said and done nothing until the police made inquiry a day later. See *id.* at 712-713. The defendant's consciousness of guilt was inferable from such silence and inaction; with the other evidence, it was enough. See *ibid.*

In *Commonwealth* v. *Rand*, 363 Mass. 554, 561-562 (1973), the evidence was sufficient where the defendant was shown to have been operating the same car as had been involved, one-half hour earlier, in a hit-and-run accident on the same street as that on which he was seen later driving, where the defendant had the opportunity to operate the car at the time of the accident, had sole possession of the ignition keys, and had not authorized anyone else to use the car.

In *Commonwealth* v. *Smith*, 368 Mass. 126, 127-129 (1975), the evidence justified a finding that the subject car had been in the defendant's sole control for several hours before the hit-and-run collision, that one person had been in the car at the time of the collision, and that the car was parked — in a damaged condition, with a warm radiator, and bearing paint marks consistent with the other vehicle — near where the defendant was found, within roughly an hour after the accident. The fact finder

> "did not have to believe the defendant's statement that he had not been out for seven hours prior to the time of the accident or that the vehicle had been stolen. If the vehicle had not been stolen, the defendant's false report of the alleged theft within fifteen minutes of the accident permitted an inference of his consciousness of guilt."

*Id.* at 129.

In *Commonwealth* v. *Doyle*, 12 Mass. App. Ct. 786, 787 (1981), there was a one-car collision at 12:45 A.M. which left one occupant dead and the other — the defendant — trying to extricate his companion from the operable driver's side door, while the passenger's side door was severely damaged and inoperable. Given this and other physical evidence placing the deceased in the passenger's seat, as well as the defendant's ownership of the car and his multiple evasive and conflicting statements showing consciousness of guilt, the evidence sufficed to establish that the defendant was the driver. See *id.* at 788-789.

In *Commonwealth* v. *Geisler*, 14 Mass. App. Ct. 268, 269-271 (1982), there was evidence that the deceased victim had been struck and dragged some distance in the middle of the night by a car owned by the defendant's wife. The evidence was sufficient to prove the defendant had operated it at the relevant time, i.e., the car had been under his exclusive control when he had driven it until at least 11:00 P.M., no one else had driven it that night, he had left it locked when he parked it within a block of his home, and only he had the keys; there was no evidence of tampering with the car doors or ignition. See *id.* at 273-274. The fact finder was free to disbelieve the defendant's account of his whereabouts after 11:00 P.M., and free to view "as false his implicit claim" that another had taken the car, struck the victim, and returned it to the spot where the defendant had parked it; further, had the jury found from such evidence that the defendant had fabricated his statement of his whereabouts, they could have considered it as evidencing his consciousness of

more than was thought insufficient in *Shea* and *Mullen*, yet less than was thought sufficient in the six cases forming the *Henry* to *Geisler* line. Unlike *Shea*, there was evidence that placed the defendant driving in his car at roughly the time of the accident. Unlike *Mullen*, there was no physical evidence undercutting the Commonwealth's contention that the accused was in the driver's seat.

What the Commonwealth presented was evidence of timing consistent with the defendant's opportunity to have driven his car at the time of the accident, shortly before 12:15 A.M., the accident's location less than a mile from the defendant's house, a delay of five and one-half hours in his reporting the approximately 12:15 A.M. theft of his car at a location within walking distance of his house, his demeanor when initially reporting the theft, discrepancies in the two recountings of the theft that he gave about a week apart, and two small fresh abrasions seen on his person less than six hours after the collision. To the extent the defendant's reported theft of his car is considered false, the Commonwealth contends it may evidence consciousness of guilt.

The Commonwealth's physical evidence, both as to the damaged car and the defendant's person, was not especially probative, one way or the other, on the point of who was driving the car at the time of the collision. This is quite unlike *Mullen* and *Doyle*. The car was found with its wheels in the air, having sustained front end damage, a broken windshield, damage to the dash, and the deployment of two airbags. There was no evidence of bloodstains in it that might have been compared with the defendant's blood. The two superficial injuries observed on the defendant were in themselves unremarkable and inconclusive, and the Commonwealth failed to offer any expert testimony "to remedy this obvious lacuna . . . [by] shed[ding] some light on how . . . the [defendant's] injuries occurred." See *Commonwealth* v. *Mullen*, 3 Mass. App. Ct. at 26. Nor was there any evidence as to how many persons were in the car at the time of the collision, any significance that might be attributed to the deployment of two front airbags, or any fingerprint evidence

---

guilt. *Id.* at 274. While such consciousness of guilt evidence alone may be insufficient, "when coupled with other probable inferences [it] may be sufficient to amass the quantum of proof necessary to prove guilt." *Ibid.*

pertinent to the driver's side of the vehicle, including the steering wheel.

While there was evidence that the defendant had been driving the car in the relevant time period, there was also evidence that he reported it had been stolen with the ignition key inside it, unlike *Henry, Swartz, Rand, Smith* and *Geisler*, which turned in part on the defendant's sole possession and control of the vehicle. See note 6, *supra.* Moreover, unlike *Swartz*, where the defendant's silence and inaction for twenty-five hours after knowing his car had been taken and damaged by an unauthorized person permitted the inference of his consciousness of guilt, see *Commonwealth* v. *Swartz*, 343 Mass. at 712-713, the defendant here did not wait for the police to find him. He called them, albeit having waited until 6:00 A.M. to do so. But see *Commonwealth* v. *Smith*, 368 Mass. at 129 (defendant's report fifteen minutes after collision that his car had been stolen consistent with consciousness of guilt). The variance in the defendant's two accounts of the theft is, moreover, minimal; the version related to the insurance investigator was more developed, but not fundamentally at odds with the version given the officer. The defendant's demeanor when first speaking with police, finally, is as consistent with a domestic quarrel, lack of sleep and discomfort with law enforcement as it is with an effort to mislead. "[T]his is not enough to resolve the uncertainty and permit a choice between, at the very most, equal inferences." *Commonwealth* v. *Mullen, supra* at 27.

While the question is quite a close one, we cannot be confident that "[t]he inferences from the entire evidence warranted the jury in finding that the defendant was operating his automobile at the time of the accident." *Commonwealth* v. *Henry*, 338 Mass. at 786. The sense of the Commonwealth's case is this: given the timing, who else but the defendant could it be? The difficulty is that the Commonwealth must prove more — that, beyond a reasonable doubt, it was the defendant who crashed the car. Disbelief of the defendant's version of events, however, does not constitute evidence of the contrary, and even strong reasonable suspicion that the defendant was the driver is not enough to warrant his conviction. Rather than permitting probable inferences to be amassed, the Commonwealth's

evidence requires speculation and surmise to prove guilt. We conclude, then, that the entire evidence, viewed in the Commonwealth's favor, is too slight to permit a jury to conclude, beyond a reasonable doubt, that the defendant and no other person was driving the car when it collided with the Pose property.

*Judgments reversed.*

*Verdicts set aside.*

*Judgment for defendant.*